IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01759-REB-KLM

LEVI FRASIER,

      Plaintiff,

v.

CHRISTOPHER L. EVANS, Denver Police Officer, #05151,
CHARLES C. JONES, Denver Police Officer, #04120,
JOHN H. BAUER, Denver Police Officer, #970321,
JOHN ROBLEDO, Denver Police Officer,
RUSSELL BOTHWELL, Denver Police Officer, #94015, and
CITY AND COUNTY OF DENVER, COLORADO,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Partial Dismissal of Plaintiff's Second Amended Complaint and Jury Demand** [#56][1] (the "Motion"). Plaintiff filed a Response [#59] in opposition to the Motion, and Defendants filed a Reply [#62]. Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to this Court for a recommendation regarding disposition. *See* [#57]. The Court has reviewed the Motion [#56], Plaintiff's Response [#59], Defendant's Reply [#62], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#56] be

_____

[1] "[#56]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

**GRANTED in part** and **DENIED in part**.

## I. Summary of the Case[2]

Plaintiff Levi Frasier, a citizen of the United States and a resident of Colorado, brings this suit against Officers Christopher L. Evans ("Evans"), Charles C. Jones ("Jones"), John H. Bauer ("Bauer"), Russell Bothwell ("Bothwell"), and John Robledo ("Robledo") of the Denver Police Department (collectively, "Defendant Officers"), and against the City and County of Denver, Colorado (the "Defendant City"). *Second Am. Compl.* [#51] at 3-4. Plaintiff raises claims pursuant to 42 U.S.C § 1983 and Colorado state law.

Plaintiff alleges the following facts as the basis for his claims. On the morning of August 14, 2014, Plaintiff witnessed an arrest while he was driving near West Fifth Avenue and Federal Boulevard in Denver, Colorado. *Second Am. Compl.* [#51] ¶ 19. Plaintiff saw two officers (Defendants Bothwell and Bauer) forcefully pulling a Latino man, who Plaintiff later learned was David Flores ("Flores"), out of a car in a parking lot. *Id.* ¶ 20. Plaintiff parked his truck and began video-recording the arrest on his Samsung tablet (the "tablet"). *Id.* ¶ 21. The officers restrained Mr. Flores on the ground, and then two additional officers (Defendants Evans and Jones) joined in the arrest. *Id.* ¶¶ 23-24. At some point, Mr. Flores appeared to have something in his mouth, which one of the Defendants later alleged was a sock containing narcotics. *Id.* ¶ 25. While Mr. Flores, who was unarmed, was held down on the ground by Defendants Evans, Bothwell, and Bauer, Defendant Jones punched Mr. Flores in the face approximately six times such that Mr. Flores' head hit the pavement multiple times. *Id.* ¶ 27. Mr. Flores' pregnant girlfriend, Mayra Lazos-Guerrero ("Lazos-

---

[2] All well-pled facts from the complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

Guerrero"), stepped toward Mr. Flores to attempt to help him, but Defendant Jones grabbed her by the legs and caused her to fall on her stomach. *Id.* ¶¶ 29-30. Mr. Flores was seriously injured and was taken away in an ambulance. *Id.* ¶ 27. At some point, while Defendant Jones was punching Mr. Flores in the head, Defendant Evans noticed Plaintiff recording the arrest and yelled "Camera!" *Id.* ¶ 34.

Plaintiff eventually stopped recording and put his tablet in his truck. *Id.* ¶ 35. One of the Defendant officers asked Plaintiff for the video Plaintiff had recorded and for Plaintiff's identification. *Id.* ¶ 36. Plaintiff turned over his identification, but did not produce the tablet because he was afraid the officer would erase the video. *Id.* ¶ 36-37. The officer told Plaintiff he could not leave until he gave a witness statement and threatened Plaintiff by opening the back door of his squad car and gesturing to the back seat, stating, "We can do this the easy way, or the hard way." *Id.* ¶ 37. The Defendant officers conferred with each other and agreed to detain Plaintiff until he gave them the video. *Id.* ¶ 40. Plaintiff alleges that the reason the officers demanded the video was "because they did not want any evidence of their misconduct in using excessive force against Mr. Flores and Ms. Lazos-Guerrero to exist." *Id.* ¶ 41. The officers surrounded Plaintiff, interrogated him, and threatened him with arrest if he did not produce the video. *Id.* ¶ 42. Plaintiff asked more than once whether he was free to go, and each time he was told by one or more of the Defendant Officers, "No, we're not done yet." *Id.* ¶ 43. The officers still had Plaintiff's identification in their possession. *Id.*

Plaintiff alleges that the Defendant Officers "agreed with each other that one of them would illegally search Plaintiff's tablet for the video." *Id.* ¶ 44. Defendant Evans escorted Plaintiff to his truck, but Plaintiff at first handed Defendant Evans his cell phone instead of

his tablet, to which Defendant Evans or Bothwell said something like, "No, that's not it." *Id.* ¶ 47.  Plaintiff then pulled out his tablet, but when Defendant Evans asked for it, Plaintiff said, "No." *Id.* ¶ 48.  Defendant Evans grabbed the tablet out of Plaintiff's hands, and Plaintiff immediately protested by saying, "Hey, you can't do that, you need a warrant for that!" *Id.* ¶ 49.  Defendant Evans ignored Plaintiff, asked what application Plaintiff used to take the video, and scrolled through Plaintiff's tablet as Plaintiff protested again that Defendant Evans needed a warrant.  *Id.* ¶ 50.  Defendant Evans either "deleted or tried to delete the video" before giving the tablet back to Plaintiff.  *Id.* ¶¶ 50-51.  Defendant Evans returned to the group of Defendant Officers, conferred with them, and then the Defendant Officers agreed to let Plaintiff go.  *Id.* ¶ 53.  Plaintiff states that he "could not find the video on his tablet when Defendant Evans gave the tablet back to him," but that he was "later able to retrieve" it.  *Id.* ¶ 54.

Plaintiff provided a copy of the video to Fox31 Denver, a television station, which did an investigative report, aired Plaintiff's video on the news, posted it on its website, and eventually won an award for its reporting.  *Id.* ¶ 56.  The Denver Police Department released a statement defending the officers' behavior and attacking Plaintiff's character. *Id.* ¶ 57.  According to Plaintiff, none of the officers were disciplined.  *Id.* ¶ 58.

The Motion [#56] seeks partial dismissal of Plaintiff's Second Amended Complaint [#51] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and C.R.C.P. 12(b)(1) and 12(b)(5).[3]  The only claim Defendants do not seek to dismiss is the Fourth Amendment

---

[3]  The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367. Despite the fact that part of the Motion [#56] is directed to state law claims, the Court applies the Federal Rules of Civil Procedure.  *See Spottedcorn v. Advanced Corr. Healthcare, Inc.*, No. CIV-11-1096-C, 2011 WL 6100653, at *1 n.1 (W.D. Okla. Dec. 7, 2011) ("While the present case is based

unlawful search claim against Defendant Evans. *See Motion* [#56] at 4. Defendants contend that dismissal is appropriate as to the rest of the claims and Defendants for the following reasons: (1) the other Defendant Officers are entitled to qualified immunity on Plaintiff's § 1983 claims, (2) the municipal liability claim lacks merit, (3) Plaintiff failed to properly allege that Defendants' conduct was willful and wanton as required to recover under Colorado law, and (4) declaratory relief is duplicative.

Plaintiff seeks declaratory relief, compensatory damages against all Defendants, punitive damages against the Defendant Officers[4] on his federal claims, and attorney's fees and costs on all federal and state claims. *Second Am. Compl.* [#51] at 30.

## II. Standard of Review

### A.    Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing

---

on federal question jurisdiction, the Erie doctrine and its progeny are still applicable as Plaintiff asserts state law claims based upon supplemental jurisdiction . . . .").

[4] Plaintiff does not specify in what capacity he is suing the Defendant Officers. However, given the defenses raised and types of relief sought, the parties appear to construe the Second Amended Complaint [#51] as suing the Defendant Officers in their individual capacities. The Court therefore treats the Complaint and Motion accordingly.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

**B.     Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.

1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.      First Amendment**

Plaintiff alleges that the Defendant Officers violated Plaintiff's First Amendment rights by harassing, intimidating, threatening, and unlawfully detaining him, and unlawfully searching his property. *Second Am. Compl.* [#51] ¶¶ 85-91. Plaintiff alleges that his First Amendment right to gather and disseminate information to the press was violated, and also alleges a retaliation claim.[5] *Response* [#59] at 10.

### 1.    Qualified Immunity

The Defendant Officers argue that they are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim because (1) no First Amendment right was violated, and (2) that "the law is not clearly established in the [Tenth] Circuit that filming police officers is a constitutionally protected activity." *Motion* [#56] at 7. Qualified immunity shields government officials from individual liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step test. One step of the test requires an assessment of whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no [c]onstitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.* The United States Supreme Court has held that

---

[5]  It appears that Defendants only challenge the retaliation aspect of Plaintiff's claim.

courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim.  *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *6 (D. Colo. Jan. 17, 2013) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Here, the Court first addresses whether Plaintiff has sufficiently alleged a constitutional violation.  "News gathering is an activity protected by the First Amendment." *Journal Publ'g Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).  The Supreme Court has stated that "there is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs."  *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)).   Additionally, "dissemination of information relating to alleged governmental misconduct . . . l[ies] at the core of the First Amendment."  *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034-35 (1991).  "This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties."  *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) (citing *Gentile*, 501 U.S. at 1035-36).

Recording police officers who are conducting official duties in public fits squarely within these purposes of the First Amendment, as does Plaintiff's particular case.  Here, Plaintiff alleges that he recorded the incident because "[h]e did not think that the Defendant Officers' actions were proper, and he felt that such misconduct should be documented."  *Second Am. Compl.* [#51] ¶ 33.  The First Amendment does not protect only professional journalists; individuals who take such action are likewise protected.  *Glik*, 655 F.3d at 83-84 ("The First Amendment right to gather news is, as the Court has often noted, not one that inures solely to the benefit of the news media; rather, the public's right of access to

information is coextensive with that of the press.") (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 16 (1978)). Additionally, Plaintiff's video was certainly newsworthy, as Fox31 Denver did an investigative report, aired the story, posted it on its website, and eventually won an award for it. *Id.* ¶ 56. The Court concludes that Plaintiff was engaged in constitutionally protected activity when he recorded the police.

Next, the Court considers whether the right was clearly established. Courts must determine whether the allegedly violated constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Furthermore, in order for a constitutional right to be clearly established, "'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015) (citing *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012)). The Supreme Court clarified that its "case law 'do[es] not require a case directly on point' for a right to be clearly established," but precedent must have placed the issue "beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (reversing because the appellate court "failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment").

The First, Seventh, Ninth, and Eleventh Circuit Courts of Appeal have all concluded

that there is a First Amendment right to record police activity in public.  *See Mocek v. City of Albuquerque*, 813 F.3d 912, 903 (10th Cir. 2015) (collecting cases); *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).  The right to record is not absolute, but rather is subject to restrictions on time, place, and manner.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 379 (S.D.N.Y. 2016).  For example, recordings that interfere with an investigation, or violate reasonable restrictions such as a "reasonable, contemporaneous order from a police officer," are not protected. *Rivera v. Foley*, No. 3:14-CV-00196 VLB, 2015 WL 1296258, at *10 (D. Conn. Mar. 23, 2015) (finding no right to record where plaintiff "directed a flying object into a police-restricted area, where it proceeded to hover over the site of a major motor vehicle accident and the responding officers within it, effectively trespassing onto an active crime scene"); *Gericke v. Begin*, 753 F.3d 1, 8-9 (1st Cir. 2014) (holding that the plaintiff had a First Amendment right to record a traffic stop where plaintiff complied with the officer's orders to move away from the scene and the officer never ordered her to stop filming).

Two Circuit Courts of Appeal have found that the right to record the police in public is not clearly established.  In *Kelly v. Borough* of *Carlisle*, 622 F.3d 248 (3d Cir. 2010), the Third Circuit concluded that there was insufficient case law supporting the passenger's right to record police during a traffic stop.  However, the Court finds *Kelly* unpersuasive because the Third Circuit was analyzing the law as it existed in 2007, when only two circuits had held that there was a clearly established right to record police officers in public.  *See id.* at 251.  The Fourth Circuit has also stated that there is no clearly established constitutional

right to record police on public property.  *Szymecki v. Houck*, 353 F. App'x 852, 853 (4th Cir. 2009).  The Court does not find *Syzmecki* persuasive for several reasons.  First, it is an unpublished decision that lacks any substantive discussion.  Second, similar to *Kelly*, *Syzmecki* was based on conduct that occurred when only two circuits had held that there was a clearly established right to record police officers.  Third, Fourth Circuit law on whether a right is "clearly established" differs from that of the Tenth Circuit.  *Syzmecki* states, "To decide whether that right was clearly established, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . .'" *Id.* at 853 (citation omitted). The Fourth Circuit does not appear to consider rights "clearly established" solely based on the weight of authority from other circuits.  However, the Tenth Circuit Court of Appeals has held that a right may be clearly established based on the weight of such authority.  *Mocek*, 813 F.3d at 922.

The Defendant Officers cite to *Mocek* to support their argument that the right is not clearly established: "[E]ven if we agreed there is a First Amendment right to record law enforcement officers in *public*, we would still need to determine whether that conduct is protected at an airport security checkpoint."  *Motion* [#56] at 7.  The Defendant Officers aver that by this statement, the Tenth Circuit Court of Appeals "acknowledged" the lack of a clearly established right to film police officers.  *Id.*  To the contrary, *Mocek* explicitly stated that the panel "need not answer" the question of whether there is a First Amendment right to record law enforcement officers in public because the plaintiff's claim failed on other grounds.  *See Mocek*, 813 F.3d at 931.  Thus, the Defendant Officers' argument is unavailing.  Given that the majority of our sister circuits that have squarely addressed the

issue have found that the right to record the police in public is clearly established, this Court reaches the same conclusion.    Accordingly, Defendants are not entitled to qualified immunity on this claim.

The Court now considers Plaintiff's First Amendment retaliation claims on the merits, specifically regarding whether Plaintiff has adequately stated the claim under Fed. R. Civ. P. 12(b)(6).

### 2.    Merits

To state a claim for unlawful retaliation under the First Amendment, a plaintiff must allege that "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015).

Regarding the first factor, as discussed above, the Court finds that Plaintiff was engaged in constitutionally protected activity.

Regarding the second factor, Plaintiff alleges that the Defendant Officers' actions in harassing, intimidating, threatening, and unlawfully detaining him, and unlawfully searching his property, caused him injury that would have chilled a person of ordinary firmness from continuing to exercise his First Amendment rights. *Second Am. Compl.* [#51] ¶ 90.  The Defendant Officers argue that Plaintiff did not suffer any injury, since he was not deterred from filming the officers, and that an ordinary person would not have been chilled by the following: one of the officers yelled "Camera!", an officer "ask[ed] for identification and to view the video Plaintiff took of the arrest," another officer told Plaintiff he could not

-13-

leave until he provided a witness statement, and an officer gestured to the back seat of a squad car and said something like, "We can do this the easy way or the hard way." *Motion* [#56] at 8; *Reply* at 4-5.  Defendants also aver that Plaintiff was "allowed to record" and "retain his video to do with it what he wished." *Motion* [#56] at 8.  However, this is contrary to Plaintiff's allegation in the Second Amended Complaint [#51] that Defendant Evans searched Plaintiff's tablet, deleted the video, and Plaintiff was only later able to recover it. *Second Am. Compl.* [#51] ¶ 54.

The Court finds that Plaintiff has sufficiently alleged that the Defendant Officers' actions caused him injury that would have chilled an ordinary person from exercising his First Amendment rights.   Plaintiff was surrounded by police officers whom he had witnessed beat a restrained man and knock down a pregnant woman, Plaintiff was told he could not leave and was threatened with arrest, the Defendant Officers conferred and agreed to detain and threaten Plaintiff until he gave them the video, and Defendant Evans grabbed the tablet out of Plaintiff's hands despite his exclamation that Defendant Evans could not do so without a warrant.  *Second Am. Compl.* [#51] ¶ 36-51.  According to Plaintiff, Defendant Evans then searched his tablet and attempted to delete the video. *Id.* ¶ 51.  This is the type of conduct that would chill an ordinary person from gathering and disseminating news. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) ("Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom.") (internal citation and quotation marks omitted); *Parker v. Ritter*, No. 08-cv-737-MSK-KLM, 2010 WL 1286081, at *9 (D. Colo. Mar. 25, 2010) ("Threats are actionable in a section 1983 retaliation claim.").  Moreover, Plaintiff has sufficiently alleged "injuries"

-14-

– detention, threats of arrest, and attempted destruction of the video – that would deter lawful news-gathering by a citizen.

Regarding the third factor, the Defendant Officers argue that Plaintiff has not sufficiently alleged that their actions were substantially motivated by Plaintiff's constitutionally protected conduct. *Motion* [#56] at 8-9. Rather, Defendants argue that they were motivated by their reasonable suspicion that Plaintiff had evidence of Mr. Flores "resisting arrest and attempting to swallow narcotics." *Id.* at 9. At this stage of the litigation, the Court must take Plaintiff's well-pled allegations as true and view them in the light most favorable to him. *See Barnes*, 783 F.3d at 1191-92. Based on Plaintiff's description of the incident, the Defendants were focused on obtaining the video from Plaintiff without the intent of retaining it. *Second Am. Compl.* [#51] at 11. As Plaintiff argues, had Defendants been investigating the alleged criminal activity involving Mr. Flores, it seems that Defendants would have sought to retain, rather than destroy, the video. *Response* [#59] at 12. Plaintiff has sufficiently alleged that the Defendant Officers' actions were substantially motivated by Plaintiff having engaged in the protected activity.

Lastly, the Court must address an additional issue regarding Plaintiff's retaliatory detention claim. Defendants argue that Plaintiff has not sufficiently alleged that his detention was substantially motivated by retaliatory intent, because they had reasonable suspicion to detain Plaintiff due to his "admitted attempts to deceive the officers with regard to his possession of evidence of a crime." *Motion* [#56] at 9-10. Taking Plaintiff's allegations in the light most favorable to him, the Court finds that he has sufficiently alleged a lack of reasonable suspicion to detain him. *See Barnes*, 783 F.3d at 1191-92. Plaintiff alleges that one of the Defendants approached Plaintiff after Mr. Flores' arrest, asked for

the video Plaintiff had recorded, and to see Plaintiff's identification.  Plaintiff provided his identification, but did not provide the tablet.  *Second Am. Compl.* [#51] ¶ 37.  The Defendant Officers then surrounded Plaintiff, interrogated him, threatened him with arrest, and told him more than once that he was not free to go.  *Id.* ¶¶ 42-43.  When Defendant Evans escorted Plaintiff to his truck to get the tablet, Plaintiff instead showed Evans his cell phone, thinking that the Defendants wanted to erase the video evidence of the incident. *Id.* ¶¶ 46-47.

First, the Court addresses whether Plaintiff has sufficiently alleged that he was "seized."  A seizure of a person constitutes a detention "when he has an objective reason to believe that he is not free to terminate his conversation with the officer and proceed on his way."  *United States v. Hernandez*, No. 15-1116, 2017 WL 526028, at *4, 6 (10th Cir. Feb. 9, 2017) (citing *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999)). Plaintiff's allegations that he "was threatened, intimidated, and was not free to leave," including that Defendants explicitly told him he was not free to leave and still had Plaintiff's identification in their possession while they surrounded him, clearly state that he was detained against his will.  *Second Am. Compl.* [#51] ¶ 43.  Considering the totality of the circumstances, Plaintiff has adequately alleged that he was "seized" within the meaning of the Fourth Amendment.

Second, the Court considers whether Plaintiff has sufficiently alleged that his seizure was unlawful.  In order to lawfully detain a person for investigative purposes, a police officer must have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot."  *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citations omitted). Furthermore, "[t]he particular person that is stopped must be suspected of criminal activity."

*United States v. Fisher*, 597 F.3d 1156, 1158-59 (10th Cir. 2010) (citation omitted). Whether reasonable suspicion exists "does not depend upon any one factor, but on the totality of the circumstances," and must be supported by more than "[i]nchoate suspicions and unparticularized hunches." *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997).

Taking Plaintiff's allegations in the light most favorable to him, he has sufficiently alleged that the Defendants did not have a reasonable suspicion that Plaintiff was engaged in criminal activity when they detained him. Defendants argue that "a reasonable officer would have believed that there was reasonable suspicion to detain [Plaintiff] based on the deliberately false information he admittedly provided to the officers with respect to the existence of the video," and that an officer's knowledge that a person is lying to him can provide reasonable suspicion that criminal activity is afoot. *Motion* [#56] at 10, 12. The fact that Defendant Evans is alleged to have yelled "Camera!" while Defendant Jones was punching Mr. Flores indicates that Defendants were concerned about someone photographing or recording the arrest. *Second Am. Compl.* [#51] ¶ 34. Thus, Plaintiff's allegations demonstrate that the Defendants initially approached him regarding the video, not regarding any suspected criminal activity on Plaintiff's part.

Additionally, according to the Second Amended Complaint, when the Defendants first approached Plaintiff and asked for the video and his identification, Plaintiff had not yet said anything to the Defendants. *Id.* ¶¶ 35-36. When asked for his identification and the video by one of the Defendants, Plaintiff gave the officer his identification but not the tablet, fearing "that the officer wanted to take his tablet or erase his video." *Id.* ¶ 37. Plaintiff alleges that he was then "detained" because the officer told him he could not leave until he

gave a witness statement, gestured to the back of the squad car saying "we can do this the easy way or the hard way," and meanwhile still kept Plaintiff's identification in his possession. *Id.* ¶ 37. The Tenth Circuit has held that a detention has not taken place when officers "merely examine an individual driver's license," but "once the officers take possession of that license, the encounter morphs into a detention" because the person "will not reasonably feel free to terminate the encounter." *United States v. Guerrero*, 472 F.3d 784, 786-87 (10th Cir. 2007). Plaintiff's allegations sufficiently allege that he was detained when the Defendant Officers took possession of his identification. Furthermore, contrary to the Defendants' argument, Plaintiff's allegations do not demonstrate that he had given any false statements at the time he was detained; rather, Plaintiff gave the officer his identification, but did not provide the tablet, which he was not required to provide pursuant to the Fourth Amendment.[6] *United States v. Benoit*, 713 F.3d 1, 8 (10th Cir. 2013) ("Subject to limited exceptions, the Fourth Amendment prohibits warrantless searches."). Thus, Defendants' argument that they detained Plaintiff on the basis of his false statements is unconvincing and the Court finds that Plaintiff's allegations support his assertion that the Defendant Officers, lacking reasonable suspicion, detained Plaintiff in retaliation for engaging in protected activity.[7]

---

[6]  Defendants argue that there was reasonable suspicion to detain Plaintiff, and even probable cause to *arrest* Plaintiff, pursuant to Colorado criminal statutes regarding providing false information. *Motion* [#56] at 10-12. However, Plaintiff's allegations that Defendants were not investigating a crime when they approached and detained him sufficiently pled that there was no reasonable suspicion, let alone probable cause, for doing so.

[7]  The Defendant Officers argue in a footnote that they are entitled to qualified immunity even if Plaintiff has sufficiently alleged a First Amendment violation, because "it cannot be said that every reasonable officer in the officers' position would have known that what they were doing violated a constitutional right . . . ." *See Motion* [#56] at 10 n.8. Defendants cite to *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011), but their reliance on that case is misplaced. *Al-Kidd* held that the

-18-

Accordingly, the Court concludes that the Defendant Officers are not entitled to qualified immunity and that Plaintiff has adequately stated a First Amendment retaliation claim.  The Court therefore respectfully **recommends** that the Motion [#59] be **denied** as to these claims.

**B.    Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Plaintiff alleges that his Fourth Amendment rights were violated by the Defendant Officers when (1) Defendant Evans, in agreement with the other Defendant Officers, seized and searched Plaintiff's tablet without consent, a warrant, probable cause, reasonable suspicion, exigent circumstances, or any other legal justification; and (2) the Defendant Officers detained Plaintiff without his consent, a warrant, reasonable suspicion, probable cause, or any other legal justification. *Second Am. Compl.* [#51] at 23-24.  Each claim is addressed below in turn.

---

law was not clearly established that a reasonable arrest pursuant to a warrant violated the Fourth Amendment. *Id.*  The Court fails to see how this is relevant to a First Amendment retaliation claim where there is no reasonable suspicion to detain.  "Indeed, there can be no doubt that 'the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.'" *See Esparza v. Bowman*, 523 F. App'x 530, 536 (10th Cir. 2013) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

### 1.    Search of Plaintiff's Tablet

With regard to Plaintiff's allegation that his tablet was unlawfully searched, Defendants Officers Jones, Bauer, Bothwell, and Robledo argue that they are entitled to qualified immunity based on lack of personal participation.[8]  *See Motion* [#56] at 11.  The Motion simply states that "the claim fails for lack of personal participation," with no further explanation.  *See id.* at 12.  Defendants clarify in the Reply that "Plaintiff does not allege that any of the other Defendant police officers were involved or present when Officer Evans searched Plaintiff's tablet."  *See Reply* [#62] at 10.  They further aver that Plaintiff's allegation that "Defendant Bauer or Bothwell" told Defendant Evans something like "if it's a picture, it's ok; we only need the video footage" does not support Plaintiff's speculation that "Defendant Bauer or Bothwell" was telling Evans to search the tablet.  *See Reply* [#62] at 10.

Defendants' argument leaves out several important alleged facts that are relevant to their personal participation.  Plaintiff's allegations regarding the search of his tablet are as follows: (1) Defendant Bauer or Bothwell told Defendant Evans "if it's a picture, it's ok; we only need the video footage," which Plaintiff interpreted as an instruction to Defendant Evans to search the tablet; (2) all Defendant Officers "conferred with each other" and "agreed with each other to detain [Plaintiff] and threaten him until he gave them the video"; (3) all Defendant Officers surrounded Plaintiff in the parking lot, interrogated him about the video, threatened him with arrest if he did not produce it, and would not let him leave; (4)

---

[8]  Defendants do not seek to dismiss the Fourth Amendment unlawful search claim against Officer Evans.  *Motion* [#56] at 11.  Additionally, Defendants do not argue the second prong of the qualified immunity test.  The Court solely addresses the arguments raised by Defendants.

Plaintiff more than once asked if he was free to leave and "one or more of the Defendant Officers" told him they were not done yet and an officer was still holding his identification; (5) "The Defendant Officers agreed with each other that one of them would illegally search [Plaintiff's] tablet for the video; and (6) that after Defendant Evans searched the tablet and "either deleted or tried to delete the video," he returned to the other Defendant Officers and "conferred with them about what he had done," after which Plaintiff was permitted to leave. *Second Am. Compl.* [#51] at 9-11.

Defendants cite to *Foote v. Spiegel*, where the Tenth Circuit determined that the defendant officer was not "personally involved" in the plaintiff's unlawful roadside detention because he had arrived late to the scene and relied on the other officer's statement that there was probable cause to detain the plaintiff.  118 F.3d 1416, 1423-24 (10th Cir. 1997).  Defendants' argument is unavailing, because here Plaintiff has alleged that all of the Defendant Officers participated in events before and after the unlawful search of the tablet.  According to Plaintiff, all Defendant Officers surrounded him to prevent him from leaving, conferred and agreed that one of them should search the tablet, and then collectively decided to let Plaintiff go after Defendant Evans completed the search.   *Second Am. Compl.* [#51] at 9-11.  Defendants also argue that Plaintiff "simply groups the Defendants together and states they violated his rights."  *Reply* [#62] at 10.  Defendants cite to *Pahls v. Thomas*, arguing "that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom* . . . Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."  718 F.3d 1210, 1225-26 (internal quotations and citations omitted) (emphasis in original). Defendants' argument that Plaintiff should not "group[ ] the Defendants together" is unavailing, where Plaintiff is alleging that

-21-

Defendants acted as a group. *Reply* [#62] at 10. The Court finds that Plaintiff has provided sufficiently specific allegations regarding a possible constitutional violation and the allegations are sufficient to demonstrate the personal involvement of all of the Defendant Officers regarding the unlawful search of Plaintiff's tablet. *See Pahls*, 718 F.3d at 1225-26.

Defendants do not argue that Plaintiff cannot meet the second element of the qualified immunity analysis, i.e., that the right was clearly established at the time when the events underlying this incident occurred. Accordingly, the Court finds that Defendants are not entitled to qualified immunity on this claim. *See In re C.W. Mining Co.*, 740 F.3d 548, 564 (10th Cir. 2014) ("Arguments raised in a perfunctory manner . . . are waived."); *Sarno v. Reilly*, No. 12-CV-00280-REB-KLM, 2013 WL 1151818, at *10 (D. Colo. Jan. 17, 2013), report and recommendation adopted, No. 12-CV-00280-REB-KLM, 2013 WL 1151817 (D. Colo. Mar. 20, 2013).

Accordingly, the Court finds that the Defendant Officers are not entitled to qualified immunity and respectfully **recommends** that the Motion [#59] be **denied** on this ground.

### 2. Detention of Plaintiff Without Reasonable Suspicion

Plaintiff alleges that he was subject to an unlawful seizure of his person under the Fourth Amendment when he was detained by the Defendant Officers, who Plaintiff alleges "agreed with each other to detain [Plaintiff] and threaten him until he gave them the video," surrounded and refused to permit Plaintiff to leave when he asked the Defendants if he was free to go, and told Plaintiff they would take him to jail if he did not produce the video. *Second Am. Compl.* [#51] ¶¶ 40, 43, 45.

Defendants argue that they are entitled to qualified immunity on Plaintiff's claim that

he was unlawfully detained because (1) Plaintiff has not sufficiently alleged that he was "detained against his will," (2) the Defendant Officers had reasonable suspicion to detain Plaintiff based on the "deliberately false information he admittedly provided to the officers with respect to the existence of the video," and (3) not every reasonable officer in Defendants' position would have known that the brief detention under these circumstances violated Plaintiff's rights. *Motion* [#56] at 10-11, 12 n.10.

Regarding the first prong of the qualified immunity test, the Court finds that Plaintiff has sufficiently alleged a Fourth Amendment violation. *See Saucier*, 533 U.S. at 201. As discussed in detail previously, Plaintiff has sufficiently alleged that he was detained, and that the Defendant Officers lacked reasonable suspicion to detain him. Thus, his detention was unlawful under the Fourth Amendment.

Next, the Court must address whether the right was clearly established. The Fourth Amendment forbids unreasonable seizures. U.S. Const. amend. IV. "Investigative detentions are Fourth Amendment seizures of limited scope and duration requiring reasonable suspicion of criminal activity." *United States v. Salas-Garcia*, 698 F.3d 1242, 1248-49 (10th Cir. 2012). Based on ample precedent, it would be clear to any reasonable officer that an investigative detention must be supported by reasonable suspicion. Therefore, Plaintiff's constitutional right was clearly established.

Accordingly, the Court concludes that the Defendant Officers are not entitled to qualified immunity and respectfully **recommends** that the Motion [#56] be **denied** on this ground.

## C.    Failure to Intervene

Plaintiff asserts that "one or more of the Defendant Officers stood by without intervening to prevent the violation of Plaintiff's rights under the First and Fourth Amendments." *Second Am. Compl.* [#51] at 25.  He alleges that they all failed to intervene when they "agreed to harass, intimidate, threaten, and unlawfully detain Plaintiff until he produced his tablet so that one of them could unlawfully search it," when they surrounded Plaintiff in the parking lot, and when Defendants Jones, Bauer, Bothwell, and Robledo stood by when Defendant Evans illegally searched and seized Plaintiff's tablet.  *Id.*

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Reid v. Wren*, 57 F.3d 1081, 1995 WL 339401, *2 (10th Cir. 1995) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  In order for liability to attach under section 1983 for an officer's failure to intervene, a plaintiff must show that (1) the defendant observed or had reason to know a constitutional violation took place, (2) there was a realistic opportunity to intervene, and (3) the defendant failed to intervene.  *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (citing *Anderson*, 17 F.3d at 557).

Defendants argue that they are entitled to qualified immunity on this claim because: (1) Plaintiff fails to allege that any constitutional violation took place, apart from the warrantless search of his tablet by Defendant Evans, (2) Plaintiff does not "establish who detained the Plaintiff unlawfully, the length of the detention, or who was present," and (3) it would not have been apparent to the Defendant Officers not directly involved in the search and seizure that a constitutional violation was occurring.  *Motion* [#56] at 12-14.

Contrary to Defendants' first contention, the Court has concluded that Plaintiff has

stated a plausible claim based on alleged constitutional violations of the First and Fourth Amendments. Contrary to Defendants' second contention, Plaintiff has named Defendants Evans, Jones, Bothwell, Bauer, and Robledo – the Defendant Officers – as the officers who detained him. *Second Am. Compl.* [#51] ¶ 42. Although Plaintiff has not specified the length of the detention, Defendants have not cited to any authority indicating that a plaintiff must indicate the length of an event in order to sufficiently allege failure to intervene, and Plaintiff's allegations are detailed enough to be plausible. Contrary to Defendants' third contention, Plaintiff has alleged involvement of all of the Defendant Officers in the violation of his constitutional rights regarding the search and seizure. Plaintiff not only alleges that the Defendant Officers were aware that an unlawful search and seizure was occurring, but in fact were involved. *Id.* ¶¶ 42-44, 53. Plaintiff's allegations sufficiently allege that the Defendant Officers knew that a constitutional violation was occurring. It is clear from Plaintiff's allegations that none of the Defendants intervened, and likely had the opportunity to do so. *Vondrak*, 535 F.3d at 1210. Therefore, the Court finds that the allegations demonstrate that each Defendant either participated in the constitutional violations, or witnessed them but did not intervene. Furthermore, the Court finds that Plaintiff's right was clearly established at the time. *Reid*, 1995 WL 339401, *2 ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

Accordingly, the Court concludes that Defendants are not entitled to qualified immunity and respectfully **recommends** that the Motion [#56] be **denied** on this ground.

**D.    Civil Conspiracy**

Plaintiff alleges that the Defendant Officers acting in concert "reached an agreement among themselves to unlawfully search and seize Plaintiff's tablet, unlawfully seize Plaintiff's person, and retaliate against him for his protected expressive activity under the First Amendment . . ." *Second Am. Compl.* [#51] ¶ 116.  A § 1983 conspiracy claim requires a plaintiff to demonstrate the alleged conspirators had a meeting of the minds and engaged in concerted action to violate the plaintiff's constitutional rights.  *Gallegos v. City & Cty. of Denver*, 984 F.2d 358, 364 (10th Cir . 1993).  To establish the existence of a conspiracy, a plaintiff must show that there was a "single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences."  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (citation omitted).

The Defendant Officers argue that Plaintiff's conspiracy claim must fail because his constitutional rights were not violated.  *Motion* [#56] at 15.  As discussed at length, the Court disagrees.  Defendants state that they had cause to threaten Plaintiff with arrest because of Plaintiff's admission that he possessed video evidence and had provided false statements to the officers, which also has been addressed by the Court.  Next, Defendants argue that Plaintiff's allegations regarding "who did what" in furtherance of the conspiracy are "impermissibly vague." *Id.*  To the contrary, the Tenth Circuit has held that "[a] plaintiff seeking redress need not prove that each participant in a conspiracy knew the 'exact limits of the illegal plan or the identity of all the participants therein.'" *Snell*, 920 F.2d at 702 (citation omitted).  Thus, Defendants' argument is unavailing.  Lastly, Defendants' contention that Plaintiff's allegations demonstrate that only Defendant Evans was involved in the search of the tablet lacks merit as discussed above.  The Court finds that Plaintiff has sufficiently alleged that there was a plan to deprive him of his constitutional rights, and that

all participants knew of the "nature and scope" of the plan. *Snell*, 920 F.2d at 701.

Defendants do not argue that Plaintiff cannot meet the second element of the qualified immunity analysis, i.e., that the right was clearly established at the time the events underlying this incident occurred. Therefore, the Court finds that Defendants are not entitled to qualified immunity on this claim. *See In re C.W. Mining Co.*, 740 F.3d at 564; *Sarno*, 2013 WL 1151818, at *10.

Accordingly, the Court **recommends** that the Motion [#56] be **denied** as to Plaintiff's civil conspiracy claim.

## E.   Claim Against the Municipality

A municipality is not liable solely because its employees caused injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Rather, a plaintiff asserting a § 1983 claim must show "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Id.* Through "its deliberate conduct," the municipality must have been the "moving force" behind the injury. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (internal quotation marks omitted).

Plaintiff states that the Defendant City is liable under § 1983 for the violations of his First Amendment rights because the "policies, practices, or customs of the relevant policymakers for the City" were the "moving force" behind the alleged misconduct. *Second Am. Compl.* [#51] ¶¶ 93-94. More specifically, he alleges that the Defendant City failed to have a policy in place, and failed to train, supervise, and discipline its officers sufficiently to prevent such First Amendment violations from occurring. *Id.* ¶¶ 66, 69-70. Plaintiff

alleges that there was a widespread pattern and practice, giving examples of three other incidents in which police officers infringed on the rights of individuals who recorded or attempted to record policy activity in public. *Id.* ¶¶ 74-77. Plaintiff contends that the fact that the Defendant City added a new policy to its Manual in November 2015 clarifying the public's right to record police supports his argument that the Defendant was aware of the problem and had not addressed it at the time the events at issue occurred. *Id.* ¶¶ 80-84.

The Court first addresses the alleged failure to train, supervise, and discipline officers. The Supreme Court has held that a municipality's failure to train can result in *Monell* liability:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). In order to prevail on such a claim, the plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. Deliberate indifference requires that policymakers must be on actual or constructive notice that deficiencies in the training program have caused employees to violate individuals' constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff's claims regarding the Defendant City's failure to supervise and discipline are analyzed under the same "failure to train" framework. *Estate of Reat v. Rodriguez*, No. 12-cv-02531-REB-MEH, 2014 WL 4358333, *2 n.4 (D. Colo. Sept. 3, 2014) ("Allegations of inadequate

discipline and/or supervision are treated as failures to train as well.").

Defendants argue that Plaintiff has failed to identify a "specific deficiency" in Defendant's training, supervision, or discipline. *Motion* [#56] at 20. To the contrary, Plaintiff has alleged that the Defendant City failed to train its officers on: "their obligation not to interfere with civilians' peaceful recording of their official duties in public; civilians' First Amendment right to record police conducting their official duties in public; or civilians' Fourth Amendment rights to keep their recordings and recording devices free from unlawful search and seizure." *Second Am. Compl.* [#51] ¶ 69. The Court finds that these allegations are sufficient to highlight a specific deficiency in the Defendant City's training.

Defendants contend that Plaintiff's description of three other incidents where Denver police interfered with individuals' right to record are unconvincing because: (1) two of the three events took place after the incident at issue and therefore could not have put the Defendant City on notice of any deficiency in its policies, (2) the conduct in the other cases is dissimilar and therefore cannot be said to have resulted from the same training deficiency, and (3) the "single, unsubstantiated prior allegation" is insufficient because the matter has not been adjudicated such that the Defendant City would be on notice that Plaintiff's allegations are meritorious. *Motion* [#56] at 18-19.

Defendants are correct that a plaintiff must normally allege "[a] pattern of similar constitutional violations" in order to demonstrate deliberate indifference. *See Connick*, 563 U.S. at 62. However, a single constitutional violation can be used to demonstrate deliberate indifference when a constitutional violation is an "obvious" consequence of failing to provide adequate training. *Id.* at 63. The Supreme Court in *Canton* offered a hypothetical example that police officers so often need to arrest fleeing felons that it would

be deliberately indifferent to not train them on the use of deadly force. *Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) ("[T]he police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers . . .").

The Court finds that Plaintiff's allegations fit into the narrow category of claims where a single constitutional violation can be sufficient to demonstrate deliberate indifference. *See id.* Plaintiff alleges that the need for such training related to First Amendment rights is "obvious, given the frequency with which police officers conduct their business in public and the ubiquity of personal electronic devices such as cell phones and tablets equipped with cameras." *Second Am. Compl.* [#51] ¶ 71. Furthermore, the need for training is obvious because "in the absence of training, there is no way for novice officers to obtain the legal knowledge they require." *Connick*, 563 U.S. at 64. Additionally, Plaintiff alleges the involvement of not just one, but five, officers in the alleged misconduct, which further indicates the necessity of adequate training. The Court concludes that it would be premature to dismiss this claim because the Second Amended Complaint pleads sufficient facts to indicate that discovery may reveal evidence to support Plaintiff's allegations. *See Shero*, 510 F.3d at 1200.

Lastly, the Court addresses Plaintiff's allegation that the City has a widespread custom and practice of infringing constitutional rights related to recording public police activities. *Response* [#59] at 23. Defendants argue that Plaintiff has failed to allege sufficient facts for liability to attach because an *absence* of policy cannot form a viable basis for liability. *Motion* [#56] at 21. Defendants' argument is unavailing. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate

decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs*, 520 U.S. at 404 (citations omitted).  To establish a "custom," a plaintiff must plead a pattern of misconduct, but "no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible." *Arakji v. Hess*, No. 15-cv-00681-CMA, 2015 WL 7755975, at *6 (D. Colo. Dec. 2, 2015) (citation and quotations omitted).

To support his argument, Plaintiff alleges three instances in which other people have been retaliated against for recording the police in public. *Second Am. Compl.* [#51] ¶¶ 75-77.  Defendants argue that these three instances are not enough to allege a "custom." *Motion* [#56] at 22.  However, in each alleged case, Denver police officers interfered with a person attempting to record police activity in public (one person was arrested, one was threatened, and one's cell phone was seized).  *Second Am. Compl.* [#51] ¶¶ 75-77.  The Court fails to see why these instances are dissimilar to Plaintiff's allegation that the Defendant Officers attempted to interfere with his First Amendment rights.  Plaintiff also correctly argues that although two of the three incidences may have occurred after the events underlying this matter, they still may be probative regarding a custom or practice. *Lindquist v. Arapahoe County*, No. 10-cv-02264-REB-MEH, 2011 WL 3163095, at *2 (D. Colo. July 26, 2011) (agreeing with plaintiff that "some post-incident conduct may be relevant to a showing of an unconstitutional policy, custom or practice pursuant to *Monell*").

Plaintiff also points to the promulgation of a new Denver Police Department policy in November 2015 as evidence that the Defendant City (1) has acknowledged that there is a First Amendment right to record the police in public, and (2) recognized that it needed

a formal policy instructing police officers regarding that right.   *Response* [#59] at 22.

Section 104.58 of the Denver Police Department Operations Manual now provides:

"Members of the public, including but not limited to media representatives and bystanders,

have a First Amendment right to observe and record officers in public places, as long as

their actions do not interfere with the officer's duties or the safety of officers or others."[9]

*Second Am. Compl.* [#51] ¶ 80.  The Manual further provides that "recording equipment

and media may not be confiscated without a warrant or exigent circumstances," unless the

individual is arrested.  *Id.*  Defendants contend that such policy cannot establish or change

the scope of constitutional rights, nor should municipalities be punished "for adopting

greater safeguards of citizens' constitutional rights than those provided by law."  *Motion*

[#56] at 23.  Contrary to the Defendants' contentions, the Court finds that the policy

appears consistent with constitutional jurisprudence in the Tenth Circuit as discussed in this

Recommendation.   Additionally, this policy indeed indicates that the Defendant City

recognized the necessity of addressing the right to record police activities.

Similar to the failure to train issue, Plaintiff has sufficiently pled a basis for municipal

liability due to a custom or practice, and it is possible that discovery may reveal further

evidence to support Plaintiff's allegations.  *See Shero*, 510 F.3d at 1200.  The Court

therefore concludes that dismissal of this claim at this stage of the litigation would be

premature.

Accordingly, the Court respectfully **recommends** that the Motion [#56] be **denied**

---

[9]   The relevant section of the Operations Manual is reproduced in Plaintiff's brief, and Defendants do not contest the veracity of the reproduction.  *See Second Am. Compl.* [#51] ¶ 80; *Motion* [#56] at 22-23.

as to Plaintiff's municipal liability claims.

### F.     State Law Claims[10]

Plaintiff brings two claims under Colorado law: trespass to chattels against Defendant Evans, and intentional infliction of emotional distress against all Defendant Officers.  *Second Am. Compl.* [#51] at 27, 28.  Defendants argue that all of Plaintiff's state law claims are barred by the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. §§ 24–10–101 *et seq.*, because Plaintiff has failed to adequately allege "willful and wanton" conduct by Defendants.  *Motion* [#56] at 23.

### 1.   CGIA

Because Defendants' argument constitutes a challenge to the Court's subject matter jurisdiction, it must be addressed first.  *See* Colo. Rev. Stat. § 24–10–109(1) (providing that compliance with the provisions of the CGIA "shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action"); *Douglas v. City & Cty. of Denver*, 203 P.3d 615, 617 (Colo. App. 2008) ("Whether a claim is barred on grounds of immunity under the CGIA is a question of subject matter jurisdiction and is properly addressed under C.R.C.P. 12(b)(1).").

The CGIA bars any claim against a public entity or a public employee for injuries that lie in tort or could lie in tort, except in certain limited circumstances.  Colo. Rev. Stat. § 24–10–105; *see also* Colo. Rev. Stat. § 24–10–106(1) ("A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether

---

[10]   "[S]tate law governs the applicability of immunity to state law claims."  *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir. 2003) (citation omitted).  Thus, the Court applies Colorado state law here.

that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section"). Claims of trespass to chattels and intentional infliction of emotional distress lie in tort under Colorado law and are therefore subject to the provisions of the CGIA. *See Mountain States Tel. & Tel. Co. v. Horn Tower Const. Co.*, 147 Colo. 166, 170 (Colo. 1961) (applying the definition of "trespass to chattels" from Restatement of the Law of Torts); *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo.1970) ("We recognize that an action in tort will lie to recover damages for severe emotional distress without any accompanying physical injury.").

Defendants argue that Plaintiff has failed to sufficiently plead willful and wanton conduct with respect to his trespass to chattels and intentional infliction of emotion distress claims. The CGIA provides that "no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his or her duties and within the scope of his or her employment, unless such act or omission was willful and wanton . . . ." Colo. Rev. Stat. § 24–10–105(1). A person engages in "willful and wanton" conduct when that person  is "adequately alleged to have purposefully pursued a course of action or inaction that he or she considered would probably result in harm" to the plaintiff. *Lincoln v. Maketa*, 176 F. Supp. 3d 1179, 1200 (D. Colo. 2016) (citing *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001)).

Plaintiff alleges that all of the Defendant Officers' actions – specifically, harassing, intimidating, threatening, and unlawfully detaining him, and unlawfully searching his tablet – were deliberate and with the intent of infringing on Plaintiff's constitutional rights. The Court finds that these allegations are sufficient to plead a purposeful course of action likely to result in harm and Plaintiff has met the jurisdictional requirements of the CGIA. *See id.*

Therefore, the Court next considers whether Plaintiff has adequately alleged facts to avoid dismissal of the state law claims under Rule 12(b)(6).

### 2.    Trespass to Chattels

"Trespass to chattels is defined as the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification." *Mountain States Tel.*, 147 Colo. at 170. A trespasser is liable when the trespass diminishes the condition, quality or value of personal property. *See CompuServe, Inc. v. Cyber Promotions*, 962 F. Supp. 1015 (S.D. Ohio 1997); *U.S. v. Jones*, 565 U.S. 400, 419 n.2 (Alito, J., concurring in the judgment) ("At common law, a suit for trespass to chattels could be maintained if there was a violation of 'the dignitary interest in the inviolability of chattels,' but today there must be 'some actual damage to the chattel before the action can be maintained.'" (quoting W. Keeton et al., Prosser & Keeton on Law of Torts § 14, at 87 (5th ed. 1984))). The quality or value of personal property may be "diminished even though it is not physically damaged by defendant's conduct." *CompuServe, Inc.*, 962 F. Supp. at 1022. The Restatement offers the following explanation for the harm requirement:

> [O]ne who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected as stated in Clause (c) [regarding an actor who is privileged to intermeddle irrespective of the possessor's consent].

Restatement (Second) of Torts § 218 cmt. e (1977). Trespass to chattels has been applied to interference with electronic devices where there is damage to the plaintiff's ability to use the full capacity of the device. *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069-71 (N.D. Cal. 2000) (concluding that plaintiff was likely to prevail on trespass to

chattels claim where defendant admitted it connected with plaintiff's computer system to search database without permission, and plaintiff's computer system suffered damage due to loss of bandwidth and capacity due to the interference).

Plaintiff has not sufficiently alleged actual damage with regard to trespass to chattels. *See CompuServe, Inc.*, 962 F. Supp. at 1022. While Plaintiff alleges that Defendant Evans "either deleted or tried to delete the video from the tablet," *Second Am. Compl.* [#51] ¶ 51, Plaintiff "was later able to retrieve the video on his tablet," *id.* ¶ 54. He has not alleged any other injury or damage to the tablet or its contents.

Accordingly, the Court respectfully **recommends** that this claim be **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### 3.    Intentional Infliction of Emotional Distress

In order for Plaintiff to sufficiently plead a claim for intentional infliction of emotional distress, he must allege that: (1) the defendants engaged in extreme and outrageous conduct; (2) defendants intended to cause the plaintiff severe emotional distress (or acted with reckless disregard for his emotional state); and (3) the plaintiff incurred severe emotional distress as a result of the conduct. *See Handy v. City of Sheridan*, No. 12-CV-01015-WYD-KMT, 2013 WL 1232211, at *11 (D. Colo. Mar. 26, 2013) (citing *Keohane v. Stewart*, 882 P.2d 1293, 1311 n.25 (Colo. 1994)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (citation omitted).

Here, Plaintiff has not alleged that he has suffered severe emotional distress. Rather, Plaintiff simply recites the elements of the cause of action, *see Second Am. Compl.* [#51] at 28, and does not direct the Court to any facts that would lead the Court to infer he has suffered distress.  *See Iqbal*, 556 U.S. at 678; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

Accordingly, the Court respectfully **recommends** that this claim be **dismissed without prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### 4.    Respondeat Superior & Indemnification

In Count VII, Plaintiff alleges that "Defendant City and County of Denver is liable as principal for all state law torts committed by its agents" under a theory of respondeat superior, on the grounds that "the behavior of the Defendant Officers was calculated to facilitate and/or promote the business for which they were employed by their employer, Defendant City and County of Denver." *Second Am. Compl.* [#51] ¶¶ 135-36.  In Count VIII, he states that "Colorado law provides that the Defendant City and County of Denver is directed to pay any judgment for compensatory damages for which its employees are liable within the scope of their employment activities." *Id.* ¶ 138.

The Court has recommended dismissal of both of Plaintiff's state law claims, which

-37-

are the basis for Counts VII and VIII, respectively entitled "Respondeat Superior" and "Indemnification." *Second Am. Compl.* [#51] at 29.  Neither Count can stand on its own, and the Court therefore respectfully **recommends** that both Count VII and Count VIII be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 127.

## G.    Declaratory Relief

Plaintiff seeks judicial declarations regarding his First and Fourth Amendment rights. *Second Am. Compl.* [#51] at 30.  Defendants argue that his request for declaratory judgment is duplicative of his other claims, and furthermore "would have no effect on the present and future legal relationships between the parties."  *Motion* [#56] at 24. Defendants fail to acknowledge that Plaintiff may seek "duplicative" relief under federal and state statutes and common law addressing the allegedly illegal conduct. Pursuit of alternative claims for similar relief is expressly permitted in federal jurisprudence. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); *see, e.g., Boulware v. Baldwin*, 545 F. App'x 725, 729 (10th Cir. 2013) ("Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims." (citing cases)).  Therefore, the Court concludes that Plaintiff's request for declaratory relief is not impermissably duplicative.  Lastly, retrospective declaratory relief is not moot "to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred." *Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006).  Because Plaintiff is seeking damages for his claims

along with declaratory relief, his request is therefore not moot.

Accordingly, the Court respectfully **recommends** that the Motion [#56] be **denied** as to Plaintiff's request for declaratory relief.

## IV. Conclusion

Accordingly, for the reasons stated above, the Court respectfully **RECOMMENDS** that Defendants' Motion [#56] be **GRANTED in part** and **DENIED in part**.

If this Recommendation is accepted, the following claims will be **dismissed with prejudice**:

(1) Trespass to Chattels (Count V).

If this Recommendation is accepted, the following claims will be **dismissed without prejudice**:

(1) Intentional Infliction of Emotional Distress (Count VI);

(2) Respondeat Superior (Count VII);

(3) Indemnification (Count VIII).

If this Recommendation is accepted, the following claims will **remain** as alleged in the Second Amended Complaint [#51]:

(1) First Amendment claim (Count I);

(2) Fourth Amendment claim (Count II);

(3) Failure to Intervene claim (Count III);

(4) Civil Conspiracy claim (Count IV); and

(5) All forms of relief sought in conjunction with Counts I, II, III, and IV.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen

(14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 3, 2017, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge