IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01759-REB-KLM

LEVI FRASIER,

Plaintiff,

v.

Denver Police Officers CHRISTOPHER L. EVANS #05151,
CHARLES C. JONES, #04120,
JOHN H. BAUER, #970321,
RUSSELL BOTHWELL, #94015,
JOHN ROBLEDO, and
CITY AND COUNTY OF DENVER, COLORADO

Defendants.

## OBJECTION TO MAGISTRATE RECOMMENDATION GRANTING IN PART, DENYING IN PART MOTION TO DISMISS

Defendants Christopher L. Evans, Charles C. Jones, John H. Bauer, Russell Bothwell, John Robledo, and the City and County of Denver ("Denver"), by and through their undersigned counsel, submit the following Objection to the Magistrate's Recommendation partially granting, partially denying the Defendants' Motion to Dismiss.

While the Recommendation is highly detailed and contains many factual and legal findings, Defendants respectfully contend that the Recommendation errs in two respects—namely, (1) the conclusion that, within the 10th Circuit, a citizen's right to film police activities is clearly established, and (2) the finding that Plaintiff states a plausible claim for municipal liability. In support thereof, Defendants state as follows:

**INTRODUCTION**

Plaintiff's claims, brought under 42 U.S.C. § 1983 and Colorado state law, arise from an incident that occurred on August 14, 2014, near West Fifth Avenue and Federal Boulevard in Denver, Colorado. (Second Amended Complaint and Jury Demand ("Amended Complaint") [Doc. #51] at ¶ 19.) Plaintiff alleges the following: on August 14, 2014, he witnessed the Defendant officers arresting an individual that the officers suspected had a sock of narcotics in his mouth, and Plaintiff filmed them. (*Id*. at ¶¶ 19-25.) At one point, Defendant police officer Evans yelled "Camera!" (*Id*. at ¶ 34.) Eventually, Plaintiff stopped recording and put his tablet in his truck. (*Id*. at ¶ 35.)

At some point after the arrest was accomplished, Officer Evans asked Plaintiff to see his identification and the video he recorded. (*Id*. at ¶ 36.) Plaintiff admits in the Amended Complaint that he refused to provide the video, even though he acknowledged he filmed a potential crime taking place and an arrest. (*Id*. at ¶¶ 19-25, 37, 47.) Plaintiff further alleges that Officer Evans (or another officer) told Plaintiff he could not leave until he provided a witness statement. (*Id*. at ¶ 37.) Officer Evans (or another officer) opened the back door of his squad car and gestured to the back seat, saying something like "we can do this the easy way or the hard way." (*Id*.) At some point, one of the other Defendant officers told Officer Evans something like "if it's a picture, it's ok; we only need the video footage." (*Id*. at ¶ 39.) Plaintiff then claims, without providing supporting facts, that the Defendant officers "conferred" and "agreed" to detain Plaintiff and threaten him until he gave them the video. (*Id*. at ¶ 40.)

The Defendant police officers then "surrounded" Plaintiff in the parking lot, asked

him about the video, and "threatened him with arrest" if he did not produce the video. (*Id.* at ¶ 42.) The officers told Plaintiff they knew he had a video. (*Id.* at ¶ 42.) Plaintiff asked whether he was free to go and one or more of the Defendant officers told him they were not done yet. (*Id.* at ¶ 43.) Officer Evans "escorted" Plaintiff to his truck, where Plaintiff retrieved his cell phone and his tablet. (*Id.* at ¶¶ 45, 47-48.) At the truck, Plaintiff attempted to deceive Officer Evans by showing the officer his cell phone as the device containing the video—though he repeatedly acknowledges in the Amended Complaint that he used a tablet, not a cell phone to record. (*Id.* at ¶¶ 21, 45, 47.) Officer Evans and/or Sergeant Bothwell correctly stated a cell phone was not the device Plaintiff had used to record the arrest. (*Id.* at ¶ 47.) Plaintiff then voluntarily took the tablet from his truck. (*Id.* at ¶ 48.)

When Plaintiff showed Officer Evans the tablet, the officer said "That's it, can we have it?" (*Id.* at ¶ 48.) Plaintiff said "no." (*Id.*) Plaintiff alleges that Officer Evans took the tablet from him. (*Id.* at ¶ 49.) Plaintiff verbally protested. (*Id.* at ¶ 49.) Officer Evans looked through the tablet and asked Plaintiff questions about it. (*Id.* at ¶ 50.) Officer Evans then returned the tablet to Plaintiff. (*Id.* at ¶ 52.) Plaintiff claims that Officer Evans deleted or tried to delete his video, apparently because Plaintiff could not immediately find the video when his tablet was returned to him, but he did eventually find the video on his tablet. (*Id.* at ¶¶ 51, 54.)

Plaintiff alleges the following claims in the Amended Complaint: (1) violation of his First Amendment rights (42 U.S.C. § 1983); (2) violation of his Fourth Amendment rights (42 U.S.C. § 1983); (3) Failure to Intervene (42 U.S.C. § 1983); (4) Civil Conspiracy (42 U.S.C. § 1983); (5) Municipal Liability; (6) Trespass to Chattels (Colorado state law); (7)

3

Intentional Infliction of Emotional Distress (Colorado state law); (8) Respondeat Superior (Colorado state law); and (9) Indemnification (Colorado state law).

In the Motion for Partial Dismissal of Plaintiff's Second Amended Complaint [Doc. #56] ("Motion to Dismiss"), the Defendants argued that Plaintiff's claims should be dismissed because: the Defendant police officers are entitled to qualified immunity on Plaintiff's claims brought under 42 U.S.C. § 1983; Plaintiff did not sufficiently allege a *Monell* claim against Denver; and the Colorado Governmental Immunity Act bars Plaintiff's state law claims because he did not sufficiently plead that the Defendant police officers acted in a willful and wanton manner. The Defendants did not seek to dismiss the Fourth Amendment unlawful search claim as to Defendant Evans.

On March 3, 2017, the Magistrate Judge issued a Recommendation granting in part and denying in part the Motion to Dismiss. (Recommendation of United States Magistrate Judge, [Doc. #63]) ("Recommendation"). The Magistrate Judge recommended that Plaintiff's First Amendment, Fourth Amendment, failure to intervene, and civil conspiracy claims against the individual police officers Defendants survive dismissal, as well as the municipal liability claim against Denver. The Magistrate Judge recommended dismissal of Plaintiff's state law claims. The Defendants object only to the recommendations that Plaintiff's First Amendment and municipal liability claims survive dismissal.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), this Court must "review *de novo* the magistrate judge's recommendation as to dispositive issues."

4

*Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F.Supp.2d 1200, 1205 (D. Colo. 1998). Upon review, this Court may "accept, reject or modify a magistrate judge's written recommendation on dispositive motions." *Malik v. Arapahoe Cnty. Dep't. of Social Services*, 987 F.Supp. 868, 871 (D. Colo. 1997). To preserve any issues for *de novo* review by this Court or for appellate review, "a party's objections to the magistrate judge's recommendation must be both timely and specific...." *U.S. v. One Parcel Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

**OBJECTIONS**

**I.     Defendants object to the recommendation that Plaintiff's First Amendment claim should survive dismissal**

The Defendant officers object to the recommendation that the First Amendment claims against them should survive dismissal. When a defendant asserts qualified immunity, a plaintiff bears a heavy two-part burden to show both that (1) the defendant-officer in question violated his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he was doing violated the law." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)) (internal citations omitted). Qualified immunity is a demanding standard, protecting "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd,* 563 U.S at 743 (internal citations and quotations omitted). Contrary to the Magistrate Judge's finding, (Recommendation at 9-13), the second prong of the qualified immunity analysis—whether the infringed right at issue was clearly established at the time of the allegedly unlawful activity—should be answered in the negative with respect to Plaintiff's

5

First Amendment claim.

The Supreme Court and the 10th Circuit have cautioned that "the right allegedly violated must be established, not as a broad general proposition, but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle v. Howards,* 566 U.S. 658, 132 S.Ct. 2088, 2094 (2012) (internal citations and quotations omitted); *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012). In *Stewart*, for example, the 10th Circuit found that the formulation of a free-exercise right was not simply the right to reasonably exercise one's religion in person, but rather the right "to be free from having to cut one's hair for prison security reasons based on one's sincerely held religious beliefs." 701 F.3d at 1330-31. Thus, the right at issue in this case is not a generalized First Amendment right to gather information, as both Plaintiff and the Magistrate Judge frame it (*see* Recommendation at 9-10),[1] but rather, a First Amendment right to film police officers in the exercise of their public duties.

In analyzing the clearly established prong, the Magistrate Judge acknowledged that a recent 10th Circuit case, *Mocek v. City of Albuquerque*, 813 F.3d 912, 931 (10th Cir. 2015), "explicitly stated that the panel 'need not answer' the question of whether there is a First Amendment right to record law enforcement officers in public because the plaintiff's claim failed on other grounds." (Recommendation at 12.) Rather, the 10th Circuit found "*even if* we agreed there is a First Amendment right to record law enforcement officers in *public,* we would still need to determine whether that conduct is protected at an

---

[1] The Magistrate Judge goes on in the Recommendation to analyze and find that there is a clearly established right to film police officers in public, but finds that Plaintiff's general "newsgathering" rights were violated.

airport security checkpoint"—the factual circumstance presented in that case. *Id.* at 931 (first emphasis added, second emphasis in original). This demonstrates the 10th Circuit's acknowledgement that it has not yet settled the issue of whether there is a clearly established right to record police officers in public.

Additionally, the Recommendation fails to acknowledge that in *Mocek*, the 10th Circuit cited to its prior decision of *McCormick v. City of Lawrence*, 130 Fed.Appx. 987 (10th Cir. 2005), which held that "it was not clearly established that police violated the First Amendment by *destroying* recordings of police activity at roadside sobriety checkpoints," and allegedly retaliating against the filmers by threatening to arrest them, attacking them, and searching their recording devices. *Id.* at 930 (emphasis added); *see also McCormick*, 130 F. App'x at 988-89. Furthermore, the *Mocek* court affirmed the lower court decision, which held "[n]either the Tenth Circuit nor the Supreme Court has directly addressed a right—constitutional or otherwise—to record police or law enforcement activity in public." *Mocek v. City of Albuquerque*, 3 F.Supp.3d 1002, 1057 (D.N.M. 2014). Thus, in *Mocek*, the 10th Circuit both acknowledged that its prior decision found no clearly established right to film police officers (even where those officers *destroyed* the recordings) and refused to establish such a right upon being invited to do so.

The 10th Circuit in *Mocek* additionally acknowledged a split among the federal courts with respect to whether there is a clearly established right to film police officers in public. *Id.* at 930 (collecting cases for and against). In the Recommendation, the Magistrate Judge distinguished and found unpersuasive the federal circuit cases finding no clearly established right on various technical grounds, and relied instead on the four

7

federal circuits that have found such a right is established. (Recommendation at 10-13.) However, where several federal courts have determined that there is no clearly established right to film police officers, reasonable officers cannot be expected to come to the opposite conclusion. *Reichle*, 132 S.Ct. at 2096 ("if judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.") (citations and edits omitted).

Moreover, here, "[t]he very intricacy of the magistrate judge's legal analysis, which drew from cases that were analogous but not directly on point, strongly suggests that any constitutional violation was not so plainly obvious as to be clearly established on the basis of these more general principles of constitutional law." *Williams v. Aragon*, No. 13-cv-02377-REB-KMT, 2014 WL 4854979, at *2 (D. Colo. Sept. 29, 2014), citing *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 n.8 (11th Cir. 1994) (en banc) ("We cannot realistically expect that reasonable police officers know more than reasonable judges about the law."), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) ("Since qualified immunity is appropriate if reasonable officers could disagree on the relevant issue, it surely must be appropriate when reasonable jurists can do so.") Accordingly, the Defendants object to the Recommendation's denial of qualified immunity on Plaintiff's First Amendment claim.

## II. Defendants object to the recommendation that Plaintiff's municipal liability claim should survive dismissal

Defendant Denver objects to the Recommendation that Plaintiff's municipal liability claim should survive dismissal. The Recommendation found that Plaintiff stated plausible municipal liability claims both on the theory that Denver failed to "train, supervise, and

discipline its officers" and that Denver "has a widespread custom and practice of infringing constitutional rights related to recording public police activities." (Recommendation 27-32.) Neither theory is viable in light of the facts alleged in the Amended Complaint.

To prevail on a claim against a municipality for failure to train, supervise, and/or discipline, a plaintiff must prove: (1) the training, supervision, and/or discipline was in fact inadequate; (2) the officer's actions exceeded constitutional limitations; (3) the officer's actions arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (4) the inadequate training, supervision, and/or discipline demonstrates a deliberate indifference on the part of the city toward persons with whom police officers come into contact; and (5) there is a direct causal link between the constitutional deprivation and the inadequate training, supervision, and/or discipline. *See Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (citing *Allen v. Muskogee,* 119 F.3d 837, 841–842 (10th Cir. 1997)).[2] The deliberate indifference standard is met by establishing that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998).

In support of the finding that the failure-to-train claim should survive dismissal, the Recommendation notes that Plaintiff gave "examples of three other incidents in which

---

[2] "Allegations of inadequate discipline and/or supervision are treated as failures to train…." *See Estate of Reat v. Rodriguez*, No. 12-CV-02531-REB-MEH, 2014 WL 4358333, at *2, n.4 (D. Colo. Sept. 3, 2014) (citing *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012)).

police officers infringed on the rights of individuals who recorded or attempted to record policy activity in public." (Recommendation at 28.) While it is true that Plaintiff listed three unrelated and unsubstantiated incidents wherein police officers allegedly prevented individuals from attempting to record them, the fact that there have been other allegations against Denver police related to citizen recordings does not alone establish municipal liability. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."); *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (to establish a widespread practice, a showing must be made that the municipality violated the constitutional rights of other people under similar circumstances).

Two of the three incidents that Plaintiff relied upon in support of his claim against the City took place after the events underlying Plaintiff's claims, and as such, could not have put Denver on notice of any deficiency in its policies prior to Plaintiff's incident.[3] (Amd. Complaint at ¶¶ 75-77.) "[B]asic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (emphasis in original). Moreover, for all three incidents in question, the alleged conduct of the police

---

[3] Plaintiff avoids including the date of both the Hernandez and the Benn incidents within the Amended Complaint. However, the date of the Hernandez incident has been widely reported by both Denver Police Department and various news agencies as January 26, 2015. Furthermore, Plaintiff's counsel represents Jessica Benn and has filed numerous pleadings in the District of Colorado indicating the date of that incident was April 29, 2015. *See Benn v. Lopez et al.*, 16cv715, Complaint and Jury Demand [Doc. #1], March 28, 2016.

officers is insufficiently similar to be said to have resulted from the same alleged training deficiency. *See Connick*, 563 U.S. at 62-63; *Carney*, 534 F.3d at 1274.

The single, unsubstantiated prior allegation described by Plaintiff in the Amended Complaint is not sufficient to establish a municipal liability claim because there has been no adjudication or finding of facts that would have put Denver on notice that such allegations had any merit. *See, e.g.*, *Crespin v. Castro*, No. 09-CV-00427-MSK- MJW, 2010 WL 3894197, at *3-5 (D. Colo. Sept. 30, 2010) ("It is not merely the fact that complaints were made that gives rise to this inference [of deliberate indifference]; it is the municipality's failure to adequately respond to or investigate the complaints, or its failure to act in response to established instances of unconstitutional conduct that gives rise to liability."); *Gantos v. City of Colorado Springs Police Dept.*, No. 07-cv-00036-REB-CBS, 2008 WL 496291, at *9 (D. Colo. Feb. 20, 2008); *Rodriguez v. Chavez*, No. 12-cv-01071-PAB-MJW, 2014 WL 4627274, at *4 (D. Colo. Sept. 16, 2014); *Rogers v. City of Little Rock*, 152 F.3d 790, 799-800 (8th Cir. 1998); *Estate of Reat*, 2014 WL 4358333, at *12. Without notice of a particular deficiency in its policies, training, supervision, or discipline, a municipality cannot be deemed to have retained a deficient program in deliberate indifference to citizen rights that are violated as a result. *Connick*, 563 U.S. at 62-63.

While the Magistrate Judge agreed with Denver that "a plaintiff must normally allege "[a] pattern of similar constitutional violations" in order to demonstrate deliberate indifference," (Recommendation at 29-30, citing *Connick*, 563 U.S. at 62), the Magistrate went on to find that Plaintiff's alleged facts demonstrate the extremely rare and narrow set of circumstances under which a single constitutional violation can be used to

11

demonstrate deliberate indifference. *See Connick,* 563 U.S. at 63-64. The Magistrate Judge analogized the instant case to a situation where a police officer untrained in the use of deadly force is handed a gun and then unleashed on society without any training or policy guidance. (Recommendation at 29-30.) If anything, that hypothetical—posed by the Supreme Court in *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)—illustrates how untenable Plaintiff's municipal claims are. There, the Court reasoned that, having armed police officers with firearms for, at least in part, the purpose of apprehending fleeing felons, the need to train officers in the use of deadly force could be said to be "'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Id*. Comparing that hypothetical to the situation presented here—both the likelihood of a constitutional violation and the magnitude of potential harm pale in comparison. This is borne out by Plaintiff's admission that despite hundreds, or even thousands of incidents of civilian filming over the past decade, there have been few-to-no instances of retaliation by Denver police. The disparity between the instant scenario and the hypothetical posed in *Canton* demonstrates that the facts of this case cannot support the extremely rare single-incident liability set forth in that case.

Additionally, the Magistrate Judge found that a Denver Police Department policy related to citizen filming of police, which was adopted in November 2015 (more than a year after Plaintiff's incident), "indicates that the Defendant City recognized the necessity of addressing the right to record police activities." (Recommendation at 32.) The policy, found at Section 104.58 of the Denver Police Department Operations Manual, now provides: "[m]embers of the public, including but not limited to media representatives and

bystanders, have a First Amendment right to observe and record officers in public places, as long as their actions do not interfere with the officer's duties or the safety of officers or others." (Provided in the Amended Compl. at ¶ 80.) However, the consideration of this later-adopted policy is improper in the municipal liability analysis because "basic principals of linear time" prevent the use of conduct that occurred *after* the alleged violation as evidence relevant to the causation of the earlier violation. *Cordova*, 569 F.3d at 1194; *Casey v. City of Fed. Heights*, No. 05-CV-01013-REB-KLM, 2008 WL 2559443, at *2 (D. Colo. June 23, 2008). *See also* F.R.E. 407 (disallowing evidence of subsequent remedial measures).

More fundamentally, DPD's policy cannot establish or change the scope of constitutional rights as interpreted by case law. The 10th Circuit has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for violation of constitutional rights or to establish the standard for those rights. *Tanberg v. Sholtis*, 401 F.3d 1151, 1162-63 (10th Cir. 2005). While the Magistrate Judge found Denver's new policy "appears consistent with constitutional jurisprudence in the Tenth Circuit," (Recommendation at 32), as discussed above, this finding is incorrect. Further, that Denver, subsequent to the events underlying this case, enacted a policy more protective than that required by 10th Circuit and Supreme Court jurisprudence should not, as a matter of public policy, be used as grounds for liability. If the Court were to adopt the reasoning of the Recommendation, municipalities would be discouraged from revising their policies over time or adopting safeguards in excess of the constitutional minimum.

Finally, the Recommendation erred in determining that the three incidents of

13

alleged retaliation for recording police activities described in the Amended Complaint were sufficient to establish a municipal custom of retaliation. (Recommendation at 30-31.) Plaintiff's allegation that citizen filming of police activity is widespread due to the "ubiquity" of electronic devices coupled with the admission that, at most, only a single incident of alleged retaliation had taken place prior to this incident, compels the conclusion that there is no DPD custom of retaliation for recording activities. (Amd. Complaint at ¶¶ 71, 75.) In light of the hundreds of DPD officer contacts with the public each and every day, the number of recordings made by civilians must number in the thousands each year. That the Amended Complaint could come forward with only three incidents of alleged retaliation despite the "ubiquity" of personal recording devices for the past decade strongly suggests that no DPD custom of retaliation for recording activities exists. *See Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993) (The elements that a plaintiff must establish in order to hold a municipality liable based on an unconstitutional custom or practice include the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the municipality's employees). Accordingly, the Defendants object to the Recommendation's finding that Plaintiff has plausibly alleged the existence of a municipal custom or practice of retaliation for citizen recording activities.

**WHEREFORE,** for the foregoing reasons, the Defendants respectfully object to the Recommendation of the Magistrate Judge, in part, and request that Plaintiff's First Amendment claim against the individual Defendants and municipal liability claim against

the City and County of Denver be dismissed, and for such other and further relief that the

Court deems just and proper.

Dated this 17th day of March, 2017.

                                           Respectfully submitted by,

                                           *s/ Jamesy C. Owen*
                                           David C. Cooperstein
                                           Jamesy C. Owen
                                           Assistant City Attorneys
                                           Denver City Attorney's Office
                                           201 W. Colfax Avenue, Dept. 1108
                                           Denver, CO  80202-5332
                                           Telephone: (720) 913-3100
                                           Facsimile: (720) 913-3131
                                           E-mail: david.cooperstein@denvergov.org
                                           E-mail:  jamesy.owen@denvergov.org
                                           Attorneys for Defendants Christopher L. Evans, Charles C. Jones, John H. Bauer, Russell Bothwell, John Robledo, and City and County of Denver

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of March, 2017, the foregoing **OBJECTION TO MAGISTRATE RECOMMENDATION GRANTING IN PART, DENYING IN PART MOTION TO DISMISS** was filed with the Clerk of the Court via the CM/ECF system, which will send a notification of such filing to the following ECF participants:

Daniel M. Twetten, Esq.
Elizabeth Wang, Esq.
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
elizabethw@loevy.com
*Attorneys for Plaintiff*

                                           *s/ Jamesy C. Owen*
                                           Office of the City Attorney