**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-01759-REB-KLM

LEVI FRASIER,

    Plaintiff,

v.

CHRISTOPHER L. EVANS, Denver Police Officer, #05151,
CHARLES C. JONES, Denver Police Officer, #04120,
JOHN H. BAUER, Denver Police Officer, #970321,
JOHN ROBLEDO, Denver Police Officer,
RUSSELL BOTHWELL, Denver Police Officer, #94015, and
CITY AND COUNTY OF DENVER, COLORADO,

    Defendants.

**ORDER RE: OBJECTIONS TO RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**Blackburn, J.**

The matters before me are (1) the **Recommendation of United States Magistrate Judge** [#63],[1] filed March 3, 2017; and (2) defendants' **Objections to Magistrate Recommendation Granting in Part, Denying in Part Motion To Dismiss** [#64], filed March 17, 2017. I sustain the objections, respectfully reject the recommendation in part and approve and adopt it in part, and grant defendants' motion to dismiss as set forth herein.

As required by 28 U.S.C. § 636(b), I have reviewed *de novo* all portions of the recommendation to which objections have been filed. I have considered carefully the

---

[1] "[#63]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

recommendation; the objections; the underlying motion, response, and reply; and all applicable caselaw. The recommendation is exceedingly thorough and well-reasoned. Defendants have asserted no objection to the magistrate judge's analysis of either aspect of plaintiff's Fourth Amendment claim (*see* **Recommendation** at 19-23), nor do they object to the recommendation to deny the motion to dismiss plaintiff's section 1983 claims alleging failure to intervene and civil conspiracy (*see id.* at 24-27). For his part, plaintiff has not objected to the magistrate judge's recommendation to dismiss all his state law claims. (*See id.* at 33-38.) Finding no error, much less plain error, in the magistrate judge's analysis of these issues, *see* **Morales-Fernandez v. Immigration & Naturalization Service**, 418 F.3d 1116, 1122 (10th Cir. 2005), I approve and adopt her recommendation as to the disposition of those claims.

Nevertheless, I respectfully must reject the magistrate judge's suggestion that the individual officer defendants are not entitled to qualified immunity as to plaintiff's First Amendment retaliation claim. Defendants do not object to the magistrate judge's determination that there exists a First Amendment right to record the police performing their official duties in a public forum, and I concur in her conclusion that there is such a right. Although the Tenth Circuit has not yet addressed this issue squarely, *see* **Moeck v. City of Albuquerque**, 813 F.3d 912, 931 (10th Cir. 2015); **McCormick v. City of Lawrence**, 130 Fed. Appx. 987, 988-89 (10th Cir. May 24, 2005), those federal courts which have "are not split . . . on whether the right exists," **Turner v. Lieutenant Driver**, 848 F.3d 678, 686-87 (5th Cir. 2017). **See American Civil Liberties Union v. Alvarez**, 679 F.3d 583, 595 (7th Cir.), 133 S.Ct. 651 (2012); **Glik v. Cunniffe**, 655 F.3d 78, 82 (1st

Cir. 2011); **Smith v. City of Cumming**, 212 F.3d 1332, 1333 (11th Cir.), **cert. denied**, 121 S.Ct. 426 (2000); **Fordyce v. City of Seattle**, 55 F.3d 436, 439 (9th Cir. 1995). Indeed, in 2015, the Denver Police Department itself adopted a policy recognizing such a right. (**See Second Am. Compl.** ¶ 80 at 19 [#51], filed August 4, 2016.) I thus have little trouble in concluding that the First Amendment encompasses a right to record police in the exercise of their official duties in public spaces, at least so long as their actions do not interfere with the officers' duties or compromise their safety. **See Fields v. City of Philadelphia**, 862 F.3d 353, 360 (3rd Cir. 2017).

Nevertheless, I must concur with defendants that this right was not clearly established as of August 2014. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." **Anderson v. Creighton**, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." **Harman v. Pollock**, 586 F.3d 1254, 1261 (10th Cir. 2009), **cert. denied**, 131 S.Ct. 73 (2010). Although a "precise factual correlation between the then-existing law and the case at hand" is not necessary, **Patrick v. Miller**, 953 F.2d 1240, 1249 (10th Cir. 1992) (citation and internal quotation marks omitted), "there must be a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited," **Hannula v. City of Lakewood**, 907 F.2d 129, 131 (10th Cir. 1990), **abrogated on other grounds**

*as recognized in Booker v. Gomez*, 745 F.3d 405, 426 (10th Cir. 2014). Qualified immunity thus "leaves ample room for mistaken judgments" protecting "all but the plainly incompetent or those who knowingly violate the law." *Harman*, 586 F.3d at 1261 (citations and internal quotation marks omitted). *See also Williamson v. Mills*, 65 F.3d 155, 157 (11th Cir. 1995) ("Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.") (citation and internal quotation marks omitted).

Because there is no Supreme Court or Tenth Circuit authority on point, *see Mocek v. City of Albuquerque*, 3 F.Supp.2d 1002, 1057 (D.N.M. 2014), *aff'd*, 813 F.3d 912 (10th Cir. 2015),[2] the operative inquiry is whether decisions of other federal courts represent "a robust consensus of cases of persuasive authority," *A.M. v. Holmes*, 830 F.3d 1123, 1150 (10th Cir. 2016), *cert. denied*, 137 S.Ct. 2151 (2017). *See also Harman*, 586 F.3d at 1261 (law is clearly established if "the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains") (citation and internal quotation marks omitted). The magistrate judge here relied on cases from the First, Seventh, Ninth, and Eleventh Circuits in concluding that the First Amendment right plaintiff invokes here was clearly established. (*See* **Recommendation** at 10-11.)[3] Reading these cases closely, however, I cannot agree.

---

[2] The Tenth Circuit in *Mocek* explicitly declined to decide whether there was a right to record law enforcement officers at an airport security checkpoint, finding the plaintiff's claims failed on other grounds. *See Mocek*, 813 F.3d at 931.

[3] The magistrate judge also addressed two contrary circuit court decisions from the Third and Fourth Circuits. (*See* **Recommendation** at 11-12.) As discussed more fully below, the Third Circuit recently has affirmatively recognized the First Amendment right plaintiff seeks to establish here, albeit finding the right was not clearly established at the relevant time. *See Fields v. City of Philadelphia*, 862 F.3d 353, 360-62 (3rd Cir. 2017).

Instead, I am persuaded by the Third Circuit's recent opinion in *Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017), that the majority of these cases are insufficiently similar to have put the individual officer defendants on notice that their conduct with respect to plaintiff violated a clearly established First Amendment right. *See also Turner*, 848 F.3d at 687-90 (same right not clearly established in the Fifth Circuit as of September 2015).

Specifically, as the *Fields* noted, the majority of the prior cases "involved expressive intent or an intent to distribute," where the plaintiff's intent to distribute the recording was apparent from the context. *Fields*, 862 F.3d at 362. For example, in *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995), the plaintiff attempted to videotape a public protest march. *Id.* at 438. Similarly, in *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir.), *cert. denied*, 133 S.Ct. 651 (2012), the ACLU sought to enjoin the enforcement of a state eavesdropping statute against its planned "police accountability program," by which it intended to make audiovisual recordings "of policing at 'expressive activity' events – protests and demonstrations – in public fora in and around the Chicago area," which it "intend[ed] to publish . . . online and through other forms of electronic media." *Id.* at 588. While the facts underlying the Eleventh Circuit's decision in *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir.), *cert. denied*, 121 S.Ct. 426 (2000), are not apparent from the opinion itself, the prior decisions the court there cited in support of its holding overwhelmingly arose in the context of the recording of public meetings or official proceedings. *See id.* at 1333.

The facts of this case do not involve an attempt to record officers in such circumstances.  The incident plaintiff recorded was not a public protest or an official meeting or proceeding and had no apparent expressive component.  Moreover, while plaintiff ultimately did distribute his recording to a news outlet, his intent to do so was not apparent from the mere act of recording itself.  Therefore, of the prior precedents the magistrate judge considered, only the First Circuit's decision **Glik v. Cunniffe**, 655 F.3d 78 (1st Cir. 2011), is truly analogous to the facts of this case.[4]  Yet "a single . . . case from one circuit is not sufficient to make the law clearly established in another circuit."  **Woodward v. City of Worland**, 977 F.2d 1392, 1397 (10th Cir. 1992), **cert. denied**, 113 S.Ct. 3038 (1993) (citation and internal quotation marks omitted).  **See also Prison Legal News, Inc. v. Simmons**, 401 F.Supp.2d 1181, 1191-92 (D. Kan. 2005) (surveying Tenth Circuit law and concluding that "[w]hile there is no bright line of demarcation, a synthesis of [Tenth Circuit] cases shows that ordinarily a court would expect to see cases from at least three other circuits before concluding that a right is clearly established based on the clearly established weight of authority from other courts.") (citation and internal quotation marks omitted).

This distinction may be a subtle one, but qualified immunity is not defeated by subtleties.  "[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  **Maciariello v. Sumner**, 973 F.2d 295, 298 (4th Cir. 1992),

---

[4] The plaintiff in **Glik** happened on officers arresting another man with what the plaintiff perceived to be excessive force and began recording the encounter on his cell phone.  **Glik**, 655 F.3d at 79-80.  The court there found both that there was a First Amendment right to record the police in those circumstances and that the right was clearly established by an earlier decision of the First Circuit, **Iacobucci v. Boulter**, 193 F.3d 14 (1st Cir. 1999).  **See id.** at 82-85.

*cert. denied*, 113 S.Ct. 1048 (1993). **See also Barts v. Joyner**, 865 F.2d 1187, 1194 (11th Cir.) (the "'clearly established' standard demands that a bright line be crossed"), *cert. denied*, 110 S.Ct. 101 (1989). Here, that distinction is consequential because it undermines a conclusion of a "substantial correspondence" between these past precedents and the officers' actions, which is required to overcome qualified immunity. **See Hannula**, 907 F.2d at 131. I thus find the individual officer defendants are entitled to qualified immunity as to plaintiff's First Amendment retaliation claim and respectfully reject the magistrate judge's recommendation to the contrary.

Defendants also object to the magistrate judge's recommendation to deny their their motion to dismiss plaintiff's municipal liability claim against the City of Denver.[5] I overrule the objections insofar as they suggest plaintiff has failed to plead a viable claim for the alleged maintenance of a policy of failing to train, supervise, and/or discipline officers who commit this type of constitutional violation. By contrast, I sustain the objections insofar as they pertain to plaintiff's allegations that the City has an unofficial custom or practice of overlooking or giving approbation to such constitutional violations.

Generally, to sufficiently allege a claim against a municipal defendant for a policy of failing to train, supervise, and/or discipline its officers, a plaintiff must alleged facts showing a "pattern of similar constitutional violations," which demonstrate the requisite deliberate indifference. **Connick v. Thompson**, 563 U.S. 51, 62, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). The magistrate judge, however, suggests this case falls within

---

[5] That the individual officers are entitled to qualified immunity does not necessarily absolve the City of liability where, as here, the court has found a constitutional right to exist, albeit one not clearly established for purposes of the qualified immunity analysis. **See Hinton v. City of Elwood, Kansas**, 997 F.2d 774, 782-83 (10th Cir. 1993).

a well-recognized exception to that rule, whereby a single incident of unconstitutional conduct may be said to demonstrate deliberate indifference. This exception, first suggested hypothetically in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10, 109 S.Ct. 1197, 1205 n.10, 103 L.Ed.2d 412 (1989), applies in "a narrow range of circumstances" in which the potential violation of constitutional rights is a "highly predictable consequence" of a municipality's failure to train its officers on the constitutional implications of situations they can be expected to encounter frequently, *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997). By allowing this possibility, "[t]he Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 131 S.Ct. at 1361.

To bring this case within the parameters of this exception, therefore, plaintiff must allege facts suggesting the situation the officers faced here "was 'common' (or at least not 'uncommon'), 'likel[y],' 'foreseeable,' or 'predictable.' The situation need not be frequent or constant; it must merely be of the type that officers can reasonably expect to confront." *Brown v. Gray*, 227 F.3d 1278, 1288 (10th Cir. 2000) (citations omitted). I agree with the magistrate judge that the allegations of the Second Amended Complaint are sufficient to meet this standard. The "ubiquity of personal electronic devices such as cell phones and tablets equipped with cameras" and the "the frequency with which police officers conduct their business in public" (**Second Am. Compl.** ¶ 69 at 16 & ¶ 71 at 16-17 [#51], filed August 4, 2016), appear so obvious that it can hardly be gainsaid

officers are likely to encounter situations in which they may find themselves the subject of a percipient witness's recording as they execute their public duties.[6] Moreover, because the First Amendment right to record officers in the execution of their public duties may be subject to reasonable time, place, and manner restrictions, *see Mocek*, 813 F.3d at 930, the need for training as to the various and nuanced circumstances in which an officer properly may object to being filmed and those in which he may not seems even more obvious, *see Connick*, 131 S.Ct. at 1361 (noting that need for training may be obvious when "[t]here is no reason to assume that police academy applicants are familiar with the constitutional constraints" on their behavior and, "in the absence of training, there is no way for novice officers to obtain the legal knowledge they require"). I therefore overrule defendants' objections in this respect and approve and adopt the magistrate judge's recommendation to deny defendants' motion to dismiss plaintiff's First Amendment claim alleging a policy of failing to train, supervise, and/or discipline.

However, I respectfully must reject the magistrate judge's concomitant conclusion that plaintiff also has stated facts sufficient to raise a viable claim against the City for maintenance of an unconstitutional custom or practice (as distinguished from a policy). A custom or practice claim by definition requires proof of a pattern of

---

[6] Defendants argue that, compared to the hypothetical exception recognized in *City of Canton* – a failure to train officers in the use of deadly force to effectuate arrests – "both the likelihood of a constitutional violation and the magnitude of personal harm pale in comparison." (**Def. Obj.** at 12.) However, the court is unaware of any authority – and defendants have cited none – which makes the potential gravity, in human terms, of the constitutional deprivation a factor in the calculus or otherwise characterizes the violation of certain constitutional rights as more serious than that of others. Given the foundational nature of the First Amendment in this country, this court is unwilling to say that a violation of the rights guaranteed by that Amendment are of less consequence than those guaranteed elsewhere in the Constitution.

misconduct "so persistent and widespread as to have the force of law," such that the municipality fairly may be said to be actually responsible for failing to address it. *Connick*, 131 S.Ct. at 1359. However, two of the incidents on which plaintiff relies in an attempt to make this vital showing occurred *after* the incident made the basis of this lawsuit. (*See* **Second Am. Compl.** ¶¶ 75-77 at 18; **Def. Obj.** at 10 n.3.) "[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates.'" *Connick*, 131 S.Ct. at 1360 n.7 (citation omitted). *See also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (with respect to allegations of custom or practice, "basic principals of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation"), *cert. denied*, 130 S.Ct. 1146 (2010); *Casey v. City of Federal Heights*, 2008 WL 2559443 at *2 (D. Colo. June 23, 2008) ("logically impossible" for events which post-date the alleged constitutional violation to constitute the "moving force" behind that violation).[7] The sole remaining incident is simply not sufficient, standing alone, to state a plausible claim for municipal liability based on a custom or practice of retaliating against persons who record the police in the public discharge of their official duties.[8]

---

[7] The magistrate judge's suggestion that "some post-incident conduct may be relevant to a showing of an unconstitutional policy, custom or practice" (*see* **Recommendation** at 31 (citing *Lindquist v. Arapahoe County*, 2011 WL 3163095 at *2 (D. Colo. July 26, 2011)), is misplaced. *Lindquist* and the cases cited therein addressed whether post-incident events are *discoverable*, under the extremely liberal standards that apply to that determination. While such evidentiary latitude may be appropriate once a custom or practice adequately has been alleged, it is not warranted in the context of a Rule 12(b) motion, where plaintiff bears the burden to actually state facts establishing a viable claim in the first instance.

[8] Moreover, plaintiff's allegations regarding that incident – which occurred eight years prior to plaintiff's encounter with the police – consist entirely of the statement that "Denver police unlawfully arrested and retaliated against a civilian . . . who was observing and recording the arrest of another

10

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Recommendation of United States Magistrate Judge** [#63], filed March 3, 2017, is approved and adopted as an order of this court in part and respectfully rejected in part, as follows:

   a. That the recommendation respectfully is rejected to the extent it recommends defendants' motion to dismiss be denied as to plaintiff's First Amendment retaliation claims against (1) the individual officer defendants; and (2) the City for the alleged maintenance of an unconstitutional custom or practice; and

   b. That in all other respects, the recommendation is approved and adopted as an order of this court;

2. That defendants' **Objections to Magistrate Recommendation Granting in Part, Denying in Part Motion To Dismiss** [#64], filed March 17, 2017, are sustained;

3. That defendants' **Motion for Partial Dismissal of Plaintiff's Second Amended Complaint and Jury Demand** [#56], filed August 30, 2016, is granted in part and denied in part, as follows:

   a. That the motion to dismiss is granted with respect to the following claims:

      (1) violation of the First Amendment (Count I) as against (a) the individual officer defendants, who are entitled to qualified immunity;

---

person." (**Second Am. Compl.** ¶ 75 at 18.) Such broad and conclusory allegations are not sufficient to plausibly allege a sufficiently similar incident. *See Connick*, 131 S.Ct. at 1360; *Turner*, 848 F.3d at 686-87.

      and (b) the City and County of Denver insofar as that claim is based on the alleged maintenance of an unconstitutional custom or practice;

      (2) trespass to chattels (Cont V);

      (3) intentional infliction of emotional distress (Count VI);

      (4) respondeat superior (Count VII); and

      (5) indemnification (Count VIII); and

   d. That in all other respects, the motion is denied;

4. That the following claims are dismissed with prejudice:

   a. violation of the First Amendment (Count I) against the individual defendants;

   b. violation of the First Amendment (Count I) against the City and County of Denver for maintenance of an unconstitutional custom or practice; and

   c. trespass to chattels (Count V);

5. That the following claims are dismissed without prejudice:

   a. intentional infliction of emotional distress (Count VI);

   b. respondeat superior (Count VII); and

   c. indemnification (Count VIII);

6. That at the time judgment enters, judgment with prejudice shall enter as follows:

   a. On behalf of the individual officer defendants, Christopher L. Evans; Charles C. Jones; John H. Bauer, Russell Bothwell; and John Robledo, and against plaintiff, Levi Frasier, as to plaintiff's claims against them for

>retaliation in violation of the First Amendment (Count I); and
>
>b. On behalf of defendant, the City and County of Denver, Colorado, and against plaintiff, Levi Frasier, as to plaintiff's claims against it for maintenance of an unconstitutional custom or practice in violation of the First Amendment (Count I); and
>
>c. On behalf of defendant, Christopher L. Evans, and against plaintiff, Levi Frasier, as to plaintiff's claims against him for trespass to chattels (Count V);

7. That at the time judgment enters, judgment without prejudice shall enter as follows:

>a. On behalf of the individual officer defendants, Christopher L. Evans; Charles C. Jones; John H. Bauer, Russell Bothwell; and John Robledo, and against plaintiff, Levi Frasier, as to plaintiff's claim for intentional infliction of emotional distress (Count VI); and
>
>b. On behalf of defendant, the City and County of Denver, Colorado, and against plaintiff, Levi Frasier, as to plaintiff's claims against it for respondeat superior liability (Count VII) and indemnification (Count VIII);[9] and

8. That at the time judgment enters, defendants shall be awarded their costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and

---

[9] By this court's reckoning, the resolution of defendant's motion leaves four remaining claims (and all attendant forms of relief sought in conjunction therewith) in this lawsuit: (1) a First Amendment claim against the City of Denver for an allegedly unconstitutional policy of failure to train, supervise, and/or discipline (Count I); and (2) claims under 42 U.S.C. § 1983 against the individual defendant officers for (a) violation of the Fourth Amendment (Count II); (b) failure to intervene (Count III); and (c) civil conspiracy (Count IV).

D.C.COLO.LCivR 54.1.

Dated September 28, 2017, at Denver, Colorado.

**BY THE COURT:**

/s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge

D.C.COLO.LCivR 54.1.

Dated September 28, 2017, at Denver, Colorado.

**BY THE COURT:**

/s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge