IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 15-cv-01759-REB-KLM

LEVI FRASIER,

    Plaintiff,

v.

Denver Police Officers CHRISTOPHER L. EVANS, #05151,
CHARLES C. JONES, #04120,
JOHN H. BAUER, #970321,
RUSSELL BOTHWELL, #94015, and
JOHN ROBLEDO,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER

**Blackburn, J.**

The matter before me is **Plaintiff's Motion To Reconsider Order Re: Objections to Recommendation of United States Magistrate Judge [Dkt. 70]** [#107],[1] filed August 17, 2018. I grant the motion.

By this motion, plaintiff Levi Frasier seeks reconsideration of that portion of my order granting the individual officer defendants' motion to dismiss Mr. Frasier's First Amendment retaliation claims against them on the ground that the relevant law was not clearly established. (*See* **Order Re: Objections to Recommendation of United States Magistrate Judge** [#70], filed September 28, 2017.) The bases warranting reconsideration of a previous order are limited to "(1) an intervening change in the

---

[1] "[#107]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." ***Servants of the Paraclete v. Does***, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted). Nevertheless, both the second and third of these considerations is implicated by Mr. Frasier's motion. I therefore grant the motion and reinstate his First Amendment retaliation claims against the officer defendants.

In considering the officer defendants' prior motion to dismiss, I found that although there exists a First Amendment right to record the police in the public performance of their official duties, that right was not clearly established with respect to the officers' alleged conduct in this case. (*See* **Order Re: Objections to Recommendation of United States Magistrate Judge** at 2-7 [#70], filed September 28, 2017.) In so concluding, I noted the distinction between the cases in which it was clearly established that members of the public had a right to record officers and the facts of Mr. Frasier's case were "subtle" but that "qualified immunity is not defeated by subtleties. '[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" (***Id.*** at 6 (quoting ***Maciariello v. Sumner***, 973 F.2d 295, 298 (4th Cir. 1992), ***cert. denied***, 113 S.Ct. 1048 (1993)).). I therefore found the defendant officers entitled to qualified immunity and dismissed Mr. Frasier's First Amendment retaliation claims against them.

Subsequently, the City sought summary judgment on Mr. Frasier's municipal liability claims, which alleged the City failed to adopt a policy regarding the First Amendment rights of citizens to record officers and failed to train, supervise, and/or

2

discipline its officers in that respect. In support of that motion, the City presented evidence demonstrating that not only did it have such a policy in place many years before the defendant officers encountered Mr. Frasier, but that each of the defendant officers had received both formal and informal training regarding the subject. Moreover, each of the defendant officers acknowledged at their respective depositions that they understood the First Amendment protected citizens' right to record them. I found that evidence dispositive of Mr. Frasier's claims against the City and dismissed those claims with prejudice. (*See* **Order Re: Defendants' Motion for Partial Summary Judgment** at 24-26 [#119], filed November 21, 2018.)

While dispositive of the municipal liability claims, this evidence casts doubt on my prior determination that the officer defendants were entitled to qualified immunity. Purely as a matter of logic, it makes no sense to say that an officer may wear the mantle of a reasonable (but less well-informed) counterpart in seeking dismissal on qualified immunity grounds and then permit his employer also to avoid liability when he later admits in discovery he did in fact know the constitutional contours of the right were as the plaintiff initially alleged. The court would be loath to sanction this type of "head's I win, tails you lose" strategy simply because it smacks of gamesmanship. Nevertheless, despite a dearth of legal authority on the question, is it inconsistent with the law of qualified immunity as well.

Although qualified immunity "leaves ample room for mistaken judgments," it does not protect "the plainly incompetent or those who knowingly violate the law." ***Malley v. Briggs***, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2ds 271 (1986). ***See also***

***Harman v. Pollock***, 586 F.3d 1254, 1261 (10th Cir. 2009), ***cert. denied***, 131 S.Ct. 73 (2010). While ***Harlow v. Fitzgerald***, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), excised the subjective component of qualified immunity analysis, ***see id.***, 102 S.Ct. at 2737-38, the individual officer's actual knowledge did not become completely irrelevant thereby. Indeed, in his concurring opinion in ***Harlow***, Justice Brennan noted specifically that he joined the majority's opinion because the standard it adopted "would not allow the official who *actually knows* that he was violating the law to escape liability for his actions, even if he could not 'reasonably have been expected' to know what he actually did know." ***Id.*** at 2739 (Brennan, J. concurring) (emphasis in original). ***See also Butz v. Economou***, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978) ("[I]t is not unfair to hold liable the official who knows or should know he is acting outside the law[.]").

Stated differently, the "objective legal reasonableness" of an officer's conduct cannot be divorced from the actual contents of his mind. The fiction of the hypothetical reasonable officer is a useful device in attempting to discern what an individual officer should know, but it must give way when the reality shows the actual officer was better informed than his fictional colleague. ***Harlow*** does not require such a result; the subjective element it removed from the qualified immunity analysis was not consideration of the officer's knowledge, but of his malice or, alternatively, good faith. ***See Krohn v. United States***, 742 F.2d 24, 31 (1st Cir. 1984). Indeed, as the ***Harlow*** majority recognized, "a reasonably competent public official should know the law governing his conduct." ***Harlow***, 102 S.Ct. at 2738. If an official can be held

4

accountable for what he is *presumed* to know, it is neither illogical nor unfair to hold him accountable for what he admits he *actually* knows.

Thus, the Tenth Circuit, citing Justice Brennan's concurrence in **Harlow**, has specifically stated that a "government official who actually knows that he is violating the law is not entitled to qualified immunity even if [his] actions [are] objectively reasonable." **Pleasant v. Lovell**, 876 F.2d 787, 798 (10th Cir. 1989). Other federal courts likewise recognize this common sense notion. **See, e.g.**, **Russo v. Massullo**, 1991 WL 27420 at *6 (6th Cir. March 5, 1991) ("Qualified immunity is not intended to protect those who knowingly violate the law;" officer who testified he knew he could not seize property not entitled to qualified immunity), **cert. denied**, 112 S.Ct. 80 (1991); **Krohn**, 742 F.2d at 31 ("If a plaintiff proves some peculiar or unusual source, specially known to the defendant, then, by hypothesis, this is what the defendant, as a reasonable man, must take into account."); **Zweibon v. Mitchell**, 720 F.2d 162, 171 n.16 (D.C. Cir. 1983) ("We would not have our opinion read to excuse the extraordinarily sly violator who actually knows that he was violating the law . . . , even if he could not reasonably have been expected to know what he actually did know. The Court's **Harlow** opinion appears to have been carefully crafted to avoid such an egregious, if doubtless rare, result."), **cert. denied**, 105 S.Ct. 244 (1984) (citation and internal quotation marks omitted). **See also Greater Los Angeles Council on Deafness, Inc. v. Zolin**, 812 F.2d 1103, 1109 n.7 (9th Cir. 1987) (officials waived qualified immunity after acknowledging awareness of requirements to accommodate disabled potential jurors by virtue of past lawsuit); **Arrington v. McDonald**, 808 F.2d 466, 467-68 (6th Cir. 1986) (remanding for further

proceedings where officers acknowledged it would be unconstitutional to arrest plaintiff solely to ascertain her identity and jury's verdict did not answer question why plaintiff was arrested).

Defendants maintain their testimony establishes only that the Denver Police Department's policy on this issue was more protective of First Amendment rights than the Constitution required. *See Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019 82 L.Ed.2d 139 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Herring v. Keenan*, 218 F.3d 1171, 1180 (10th Cir. 2000), *cert. denied*, 122 S.Ct. 96 (2001) (same). This argument mischaracterizes the nature of the evidence presented in support of the City's motion for summary judgment.

Indeed, the City specifically argued – and this court found – that the 2007 Training Bulletin, representing official City policy, was not limited solely to the activities of the activist organization CopWatch. (*See* **Order Re: Defendants' Motion for Partial Summary Judgment** at 22-23 & n.20, 25.) Yet it was precisely the activities of organizations such as CopWatch which I previously found represented the outer boundaries of the clearly established law, and thus entitled the officer defendants to qualified immunity. (*See* **Order Re: Objections to Recommendation of United States Magistrate Judge** at 5-7 (discussing particularly *Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017).)

Likewise, the City relied on – and I found persuasive – the content of a training course which Detective Bauer and Officers Evans, Jones, and Robledo all completed in 2013, which specifically advised officers that "The Civil Rights Division of the Justice

6

Department . . . declar[ed] that citizens have a First Amendment Right to videotape the actions of police officers in public places and that seizure or destruction of such recordings violates constitutional rights." That pronouncement was not tied to some quirk of DPD policy, nor was it limited in any way, including in the way I previously found dispositive for qualified immunity purposes.

Finally, the defendant officers all testified to their understanding of what the First Amendment demanded, and it appears clear they believed DPD policy was consistent with that constitutional imperative. The evidence supports that understanding as both broad and grounded in the Constitution itself.

Thus, based on the new facts revealed in discovery, and to prevent clear error and manifest injustice, I find and conclude Mr. Frasier's First Amendment retaliation claims against the individual officer defendants should be reinstated.[2] However, I will afford defendants the opportunity to contest the evidentiary sufficiency of these claims via a motion for summary judgment limited to those discrete matters.[3]

**THEREFORE, IT IS ORDERED** as follows:

---

[2] Although those claims were dismissed at the pleading stage, I reject defendants' hypertechnical (and not altogether cogent) suggestion that Mr. Frasier's failure to include these facts in his complaint somehow prevents the court from considering them now. It is not clear how defendants imagine Mr. Frasier would have known these facts prior to discovery (unless they suggest he risk a Rule 11 violation), which the very nature of the qualified immunity analysis prevents him from pursuing until after the allegations of the complaint are vetted. Even if this evidence had been available to Mr. Frasier at the time the 12(b) motion was briefed, the court certainly could have considered it under Fed. R. Civ. P. 12(d) without requiring Mr. Frasier to amend his complaint.

[3] The motion shall be filed by the date indicated in this order. Deadlines to file the response and reply (if any) shall be governed by D.C.COLO.LCivR 7.1(d). All briefs submitted must comply with the requirements of REB Civ. Practice Standard IV.B.2. I further note my intention to maintain the extant trial date of this already overly protracted case, and my extreme disinclination to grant any extension of these deadlines.

1. That **Plaintiff's Motion To Reconsider Order Re: Objections to Recommendation of United States Magistrate Judge [Dkt. 70]** [#107], filed August 17, 2018, is granted;

2. That the following paragraphs of my **Order Re: Objections to Recommendation of Magistrate Judge** [#70], filed September 28, 2017, are vacated:

    a. Paragraph 1.a(1) at 11;

    b. Paragraph 3.a(1) at 11;

    c. Paragraph 4.a. at 12; and

    d. Paragraph 6.a. at 12-13; and

3. That Mr. Frasier's First Amendment retaliation claims against defendants Christopher L. Evans; Charles C. Jones; John H. Bauer; Russell Bothwell; and John Robledo are reinstated; and

4. That defendants may file a motion for summary judgment as to these claims on or before **December 4, 2018**.

Dated November 21, 2018, at Denver, Colorado.

          **BY THE COURT:**

          */s/ Bob Blackburn*
          Robert E. Blackburn
          United States District Judge